**In the Matter of J. R. CIANCHETTE & SONS CORP. and Joseph R. Cianchette, Debtors (Consolidated).**

**Nos. 8654, 8655.**

United States District Court
D. Maine, N. D.
Oct. 20, 1961.

Edward J. Berman, Portland, Me., for petitioner.

Peter N. Kyros, Portland, Me., Frederick Fisher, Jr., Boston, Mass., Peter A. Isaacson, Lewiston, Me., for debtors.

GIGNOUX, District Judge.

This matter is before the Court upon the petition of the New England Merchants National Bank of Boston for review of an order of the Referee in Bankruptcy dated August 16, 1961. By his order the Referee determined that a conditional sales contract held by the Bank was invalid as against unsecured creditors of the Debtors in these Chapter XI Arrangement proceedings, and classified the Bank's claim as wholly unsecured in the amount of $31,789.21.

Briefly stated, the material facts as stipulated by the parties and as found by the Referee are as follows: On December 28, 1959, Hedge & Mattheis Company and J. R. Cianchette & Sons Corp. entered into a conditional sales contract as to a piece of construction equipment known as a "Gradall". The time balance due under that contract was $39,055.21. The contract was assigned to the petitioning Bank on December 29, 1959. On September 27, 1960 J. R. Cianchette & Sons Corp. and Joseph R. Cianchette filed separate petitions for an arrangement under Chapter XI of the Bankruptcy Act. By Court order, the petitions were consolidated and the Debtors were continued in possession of their property, without the appointment of a trustee. Bankruptcy Act, § 342 (11 U.S.C. § 742). It was not until June 26, 1961, some nine months after the institution of the arrangement proceedings, that the Bank's conditional sales contract was recorded in accordance with Maine law in the office of the Town Clerk of Pittsfield, Maine. The appraised value of the "Gradall" is $20,000. The present unpaid balance due the Bank is $33,555.21, and the "close-out" as of September 27, 1960 is $31,789.21.

The parties also agreed, and the Referee found, that the "Gradall" is unique and is the only item of its type owned by the Debtors on and subsequent to September 27, 1960; that it was used in the construction program of the estate during the winter of 1961; that it was excluded from auctions conducted in July, 1961 because of the special need for that equipment; that it is presently being offered for sale or mortgage, the proceeds to be used for effecting the arrangement; and, generally, that it is property dealt with under the arrangement. Also, counsel for the Creditors' Committee stated before the Referee that throughout these proceedings they have taken into account the possibility of the Bank's claim being considered unsecured, and the asset inuring to the benefit of unsecured creditors.

The records of this Court further disclose that the plan of arrangement was confirmed by the Referee on August 29, 1961. It provides for the payment to unsecured creditors of a 20% dividend prior to January 1, 1962, with the possibility of an additional dividend to be paid not later than July 2, 1962.

Under Maine law, the failure of the Bank to record the conditional sales contract rendered it invalid as against creditors of the Debtor as of the date of the petition although it was valid as between the parties thereto. Me.Rev.Stat. ch. 119, § 9 (1954). The Bank does not dispute this, nor does it deny that under Section 70, sub. c of the Bankruptcy Act (11 U.S.C. § 110, sub. c) the contract would be voidable by a trustee in bankruptcy. It contends, however, that the rights of a trustee under Section 70, sub. c of the Bankruptcy Act are unavailable to a debtor-in-possession in a Chapter XI Arrangement proceeding. The Bank's theory is that although Section 342 of Chapter XI of the Act vests a debtor-in-possession with the *title* and *powers* of a trustee, it does not grant a debtor-in-possession the *rights* of a trustee. This contention is based upon the assumption that the basis upon which a trustee under Section 70, sub. c may avoid a conditional sales contract which is invalid as to creditors is the exercise of a *right*, which is not a right inherent in any *title* he may hold and which is to be distinguished from any *power* he may have. The Bank buttresses its argument by pointing out that Section 188 of Chapter X of the Bankruptcy Act (11 U.S.C. § 588) vests a debtor-in-possession in a Chapter X Reorganization proceeding with the *title, rights, duties* and *powers* of a trustee in bankruptcy.

The Court cannot agree. The Bank's argument is expressly rejected in In re Martin Custom Made Tires Corp., 2 Cir., 1939, 108 F.2d 172, and the Court has been presented no authority to the contrary. As stated in the Martin case at page 173:

"This reasoning fails to give effect to one of the main purposes of such reorganization proceedings as this.

It is to make a fair and equitable application of the assets of a debtor, which cannot meet its obligations by payment in full as they mature, to an adjustment of its debts which are to be given like treatment when they are of like standing. If all debts are paid in full, it is obvious that it is immaterial whether some of them are secured or not and whether the security is valid only as to the debtor. But if, as here, some creditors must be satisfied with less than full payment the manner in which claims are entitled to share in the assets is of prime importance to those creditors.

"The attempted distinction between the powers of a debtor in possession and the rights of a trustee in bankruptcy is unreal. A debtor in possession holds its powers in trust for the benefit of the creditors. The creditors have the right to require the debtor in possession to exercise those powers for their benefit. Consequently, the debtor in possession may move to have the mortgage held invalid as to creditors and have the mortgagee treated as an unsecured creditor in these proceedings."

The reasoning of the Martin case is regarded as dispositive of the Bank's argument in 8 Collier on Bankruptcy § 6.32 at 813–818 (14th ed. 1914), and in MacLachlan, Bankruptcy §§ 341–342 (1956). As these authorities suggest, neither the difference between the wording of Section 342 of Chapter XI and Section 188 of Chapter X, nor the failure of Section 342 in terms to include *rights* should be given *controlling significance.* There is nothing in the statutory scheme of Chapter XI nor in the legislative history of Section 342 to indicate that the failure of Congress to include in Section 342 the technical terms, *rights, duties* and *remedies,* and the apparent use of the terms, *title* and *powers,* in their colloquial sense are attributable to anything other than imprecise draftsmanship.

■■ To accept the Bank's argument in the instant case would be to defeat the underlying purpose of Chapter XI, which is to apply the assets of the debtor equitably without bankruptcy. In re Leight & Co., 7 Cir., 1943, 139 F.2d 313; In re Slumberland Bedding Co., D.C.Md. 1953, 115 F.Supp. 39. If a debtor in possession cannot avoid a claim of security which is voidable in bankruptcy, the only protection which the unsecured creditors would have against prior satisfaction of such a claim would be to initiate bankruptcy *proceedings and thus frustrate the* policy of Chapter XI. Such a result is not required by the language of Section 342, which is reasonably capable of a construction which is broad enough to achieve the legislative purpose which seems obvious from the scheme of Chapter XI. By recognized principles of sound statutory interpretation, where language is susceptible of a construction which preserves the usefulness of a statute, the courts should give expression to the intendment of the law. Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 1938, 305 U.S. 315, 333, 59 S.Ct. 191, 83 L.Ed. 195; United States v. American Trucking Ass'ns, 1940, 310 U.S. 534, 542–544, 60 S.Ct. 1059, 84 L.Ed. 1345.

The parties have agreed, and the Referee has found, that the property in question was dealt with under the arrangement and that the proceeds of its sale or mortgage are to be used for effecting the plan. Therefore, this petition is in the interest of general creditors and the exception to the Martin case recognized in Whiteford Plastics Co. v. Chase National Bank, 2 Cir., 1950, 179 F.2d 582 is not applicable.

■ The Bank also contests the Referee's finding that the amount of the Bank's unsecured claim is $31,789.21, the agreed amount of the unpaid balance with interest due the Bank as of September 27, 1960, the date upon which the arrangement proceedings were initiated. The Referee is correct in his conclusion that interest stops on an unsecured claim upon the date of the filing of the petition. Bankruptcy Act, § 63, sub. a(1) (11 U.S. C. § 103, sub. a(1)); Sexton v. Drey-

fus, 1911, 219 U.S. 339, 31 S.Ct. 256, 55 L.Ed. 244.

The foregoing disposition of this case makes it unnecessary to consider any priority of the United States tax liens over the Bank's claim, which was discussed in the Referee's opinion.

The order of the Referee is affirmed.