In re Julian H. EADY, Debtor.

John J. GOGER, Trustee and Plaintiff,

v.

UNITED STATES of America; Georgia Department of Revenue, Withholding Tax Section; Georgia Sales and Use Tax Unit, State of Georgia, Department of Revenue; State of Georgia Central Audit Unit; Georgia Department of Labor, Employment Security Agency; State of Georgia Income Tax Unit; Tax Commissioner, De Kalb County; Tax Commissioner, Butts County; Tax Commissioner, Clayton County; Tax Commissioner, Henry County; Tax Commissioner, Newton County; Jack W. Chancey; Swan Construction Company, Inc.; Bags by Frances, Inc.; Jo Swan; Evelyn Dickmax; First Georgia Bank; C. J. Hulsey, Defendants.

Bankruptcy No. 79–03140A.
Adv. No. 79–0046A.

United States Bankruptcy Court,
N. D. Georgia,
Atlanta Division.

Oct. 23, 1979 (Bankruptcy).

Dec. 10, 1979 (Adversary).

John J. Goger, Arrington, Rubin, Winter, Kirscher & Goger, Atlanta, Ga., for trustee and plaintiff.

Douglas R. Haynie, Haynie & Willis, Marietta, Ga., for defendant Chancey.

Alvin L. Bridges, Jr., Dunaway, Haas, Broome, Hope & Bridges, Atlanta, Ga., for defendant Hulsey.

STATEMENT OF THE CASE

W. HOMER DRAKE, Jr., Bankruptcy Judge.

On October 23, 1979, the above-named debtor filed a petition for relief under Chapter 3 of the Bankruptcy Code, 11 U.S.C. § 301. A trustee for his estate was appointed and on December 10, 1979, the trustee filed a complaint to sell, *inter alia*, certain equipment, inventory and realty located at 3911 Covington Highway, Decatur, Georgia, known as "Julian's Tavern." The

complaint also sought to determine what security interest, if any, in the equipment of Julian's Tavern might be held by either defendant Jack W. Chancey (hereinafter referred to as "Chancey") or defendant First Georgia Bank.

On that same date this Court ordered all parties in interest to show cause at a hearing on December 20, 1979 why the trustee should not be authorized to sell the above-described property pursuant to his complaint. The Court further ordered the named defendants and each party asserting a claim with respect to the described property to file a statement of such claim by December 17, 1979, to file a motion or answer to the complaint by December 17, 1979, and to file any objections to the sale in writing setting forth the grounds for objection by December 16, 1979. The Court also ordered that notice of the hearing be given by mail to all parties in interest including creditors.

On December 17, 1979, defendant C. J. Hulsey (hereinafter referred to as "Hulsey") answered the complaint stating that the assets of Julian's Tavern had been represented by the debtor as having belonged to Janmar, Inc., as indicated by a security agreement attached thereto. Hulsey further claimed a security interest in such assets based upon the attached security agreement and objected to the sale of said property, insisting on abandonment by the trustee to defendant Hulsey in order that his security interest might be foreclosed.

Also on December 17, 1979, the defendant First Georgia Bank answered. This defendant claimed a perfected security interest in the inventory and certain listed equipment and prayed that the plaintiff's complaint to sell the inventory be denied and that the listed equipment be abandoned to it.

On December 18, 1979, defendant Chancey filed his answer showing a security interest in the assets of Julian's Tavern and praying that his proof of claim be allowed and that his secured interest be reflected upon the Court records.

On December 20, 1979, a pre-trial hearing was held on the complaint and an Order filed the following day. The Order allowed the trustee to abandon the equipment of Julian's Tavern to the First Georgia Bank and Chancey as their interests appear. The Court also ordered the trustee to sell the inventory and goodwill of Julian's Tavern to the debtor for the sum of One Thousand Dollars to be paid over the next six months.

On January 7, 1980, this Court set down the trial on the complaint for January 23, 1980. The trial was held and the Court asked for briefs in support of the various claims of security interests.

On February 4, 1980, Hulsey filed a brief in support of his alleged security interest in the proceeds of the sale of inventory of Julian's Tavern.

On February 6, 1980, the plaintiff filed a supplemental trial brief denying that Hulsey had any perfected security interest in any property of Julian's Tavern.

## STATEMENT OF FACTS

### 1.

A security interest was signed by Julian Eady, as President of Janmar, Inc., creating in favor of C. J. Hulsey a security interest in the equipment, furnishings and personal property located at Julian's Tavern.

### 2.

In the security agreement, Eady represented that Janmar, Inc. was the owner of the property which was the subject of the security agreement.

### 3.

The signature of the debtor on the security agreement was executed as follows:

"JANMAR, INC.
By: /s/ Julian Eady, President"

### 4.

Janmar, Inc. was never the owner of any property described by the security agree-

ment. In fact, Julian Eady was the owner of said property.

5.

Hulsey filed a U.C.C. financing statement in DeKalb County, Georgia, the principal place of business of Janmar, Inc.

6.

The financing statement was indexed under the name Janmar, Inc.

## CONCLUSIONS OF LAW

■ The sole issue is whether the security agreement created in favor of Hulsey was sufficiently perfected to defeat the claim of the trustee in bankruptcy as lien creditor under 11 U.S.C. § 544(a)(1). An unperfected security interest is subordinate to the rights of a person who becomes a lien creditor, including a trustee in bankruptcy from the date of filing of the petition, before the security interest is perfected. Ga.Code Ann. § 109A–9–301. With certain exceptions not applicable here, a financing statement must be filed to perfect all security interests. Ga.Code Ann. § 109A–9–302(1); *Park Avenue Bank v. Bassford*, 232 Ga. 216, 205 S.E.2d 861 (1974).

"A financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor, . . . [and] gives a mailing address of the debtor." Ga.Code Ann. § 109A–9–402 (eff. July 1, 1978). The evidence shows that the security agreement was made on December 29, 1977 but does not show when the financing statement was filed. However, the Reviser's Comment to the Georgia Code Annotated states that the only change from prior law is that it "Makes explicit the implicit requirement of the former law that the names of the debtor and the secured party be shown." Ga.Reviser's Comment, Ga. Code Ann. § 109A–9–402, p. 379.

This raises the question whether the financing statement filed in DeKalb County was sufficient to perfect the security interest where the debtor's name was incorrect.

One commentator has said, "[M]ost of the courts have been willing to tolerate incorrect names and incorrect indexing as effective under § 9–402(5) when in their judgment the inaccuracies were not 'seriously misleading.' We believe this to be the proper approach and encourage the courts to focus here on whether a reasonably diligent searcher would be likely to discover a financing statement indexed under the incorrect name." White and Summers, Uniform Commercial Code § 23–16, p. 839 (1972).

■ In *In re Firth*, 363 F.Supp. 369 (M.D. Ga.1973), the Court was faced with facts similar to those in this case. There the financing statement bore the name of the debtor as and was indexed under the name of "National Photocopy Equipment Co." The debtor's signature was executed as follows:

"National Photocopy Equipment Co.

By: /s/ James A. Firth."

In bankruptcy proceeding the allegedly secured creditor sought the return of the assets described by the security agreement, but owned by James A. Firth. The Bankruptcy Judge ruled that the security agreement was unperfected due to an insufficient financing statement and the District Court affirmed. The rationale was that "persons searching the records would not be put on notice by such a filing." 363 F.Supp. at 371. One Court has cited this case for the proposition that:

"The rule from these and similar cases is that filing under a trade name only is generally defective where the trade name materially differs from the debtor's real name." *In re Hammons*, 438 F.Supp. 1143, 1151 (S.D.Miss.1977).

While not going so far as to state a rule of law, this Court finds that the filing of this financing statement was materially defective so as to perfect no security interest against the trustee in bankruptcy.

The defendant Hulsey argues that because Eady misrepresented the ownership

**4**

of the assets at the time of the signing of the security agreement he should be estopped under Georgia Corporation Law from denying ownership by Janmar, Inc. A similar agreement was offered and found deficient in *Firth.* Ga.Code Ann. § 106–303, relating to the right of persons to contact under an unregistered trade name, has the effect of binding a sole proprietor who contracts in an unregistered trade name. The Court in *Firth* found that while this Georgia statute might have the effect of binding those "who contract in fictitious names to the contract so executed, [it] does not have the effect of saying that financing statements given in fictitious names are sufficient to notify subsequent creditors of the identity of the party using the fictitious name". 363 F.Supp. at 372.

Likewise, Georgia Corporation Law may have the effect of personally binding Mr. Eady, but it does not give sufficient notice to subsequent purchasers from Mr. Eady to perfect the security interest.

Therefore, defendant Hulsey has no secured interest in the proceeds from the sale of the inventory of Julian's Tavern.

### ORDER

It is hereby ORDERED and ADJUDGED that the defendant's objection to the sale of the inventory of Julian's Tavern be denied.

IT IS SO ORDERED.