**In re SPORTSWEAR SHOPPE, LTD., Debtor.**

**CITIZENS BANK OF ELDON, Plaintiff,**

**v.**

**SPORTSWEAR SHOPPE, LTD., Defendant.**

**Bankruptcy No. 81–01731–C–11.**

**Adv. No. 81–1355–C–11.**

United States Bankruptcy Court, W. D. Missouri, C. D.

Dec. 14, 1981.

---

Jerry W. Venters, Jefferson City, Mo., for plaintiff.

Mendel Small, Kansas City, Mo., for debtor/defendant.

## ORDER ON COMPLAINT OF CITIZENS BANK OF ELDON

FRANK P. BARKER, Jr., Bankruptcy Judge.

The issue before the Court is whether the Plaintiff, Citizens Bank of Eldon, has a perfected security interest in the inventory and other collateral owned by Sportswear Shoppe, Ltd., debtor-in-possession herein, and whether that security interest is superior to that of the debtor-in-possession herein taking into account § 1107 of the Bankruptcy Code.

1. (Exhibits are not included with opinion—Ed.)

Plaintiff contends that it has a properly perfected security interest in the affected collateral and that, as a result, Plaintiff's rights to the affected collateral are superior to the rights of the debtor-in-possession herein and any trustee which might subsequently be appointed by the Court. Defendant contends that Plaintiff's rights to the collateral are the same as other unsecured creditors of the Debtor because Plaintiff failed to properly perfect its security interest.

The parties have stipulated to the following facts:

1. Defendant, Sportswear Shoppe, Ltd., (hereinafter Defendant) filed in this Court on May 27, 1981, its Petition for reorganization pursuant to Chapter 11 of Title 11, United States Code, and listed Plaintiff Citizens Bank of Eldon (hereinafter Plaintiff) as an unsecured creditor in the amount of $268,503.70.

2. On May 13, 1980, Defendant, by its President, Robert L. March, and its Vice-President, Jacqueline B. March, entered into a combined promissory note and security agreement in the principal sum of $249,-303.70. Said note states it was secured by the inventory of the Knifebird Indian Shop and the Gingerbread House, the personal home of Robert L. March and Jacqueline B. March, certain certificates of deposit, and the building housing the Knifebird Indian Shop. A copy of said promissory note and security agreement is attached hereto, marked Exhibit A,[1] and is incorporated herein by reference, and may be admitted in evidence without objection.

3. On January 29, 1980, Plaintiff filed in the office of the recorder of deeds of Miller County, Missouri, a financing statement (Form UCC–1), a copy of which is attached hereto, marked Exhibit B, and which is incorporated herein by reference and which may be admitted in evidence without objection.

4. On January 29, 1980, Plaintiff filed in the office of the Secretary of State of Mis-

souri, a financing statement (Form UCC–1), a copy of which is attached hereto, marked Exhibit C, and which is incorporated herein by reference and which may be admitted in evidence without objection.

5. On April 21, 1981, upon submission of a written request, the office of the Secretary of State of Missouri made a search of its UCC–1 filings with respect to Defendant as a debtor, and such search disclosed no security interest or UCC–1 on file in the name of Defendant as debtor and Plaintiff as a secured party. A copy of said request is attached hereto, marked Exhibit D (consisting of two pages), and which is incorporated herein by reference and which may be admitted in evidence without objection.

6. On April 20, 1981, upon submission of a written request, the office of the recorder of deeds of Miller County, Missouri, made a search of its UCC–1 filings with respect to Defendant as a debtor, and such search disclosed no security interest or UCC–1 on file in the name of Defendant as debtor and Plaintiff as the secured party. A copy of said request is attached hereto, marked Exhibit E (consisting of three pages), and which is incorporated herein by reference and which may be admitted in evidence without objection.

7. The office of the Secretary of State of Missouri indexes all financing statements (Form UCC–1) filed according to the names, including trade names, which are shown in the box labeled "1. Debtor(s)..." in the upper left-hand corner of said financing statements (Form UCC–1), and does not index said financing statements (Form UCC–1) according to names and signatures appearing on the lower left-hand side of said forms (designated "Signature(s) of Debtor(s)").

8. The procedure referred to in the preceding Paragraph 7 is followed by the Office of the Recorder of Deeds of Miller County, Missouri.

9. Defendant and its officers, Robert L. March and Jacqueline B. March, had actual knowledge of the financing statements (Form UCC–1), and the contents thereof, referred to in Paragraphs 3 and 4 hereof

(Exhibits B and C, respectively), before the filing of the Petition referred to in Paragraph 1 hereof.

Counsel for both parties and the Court agree that certain basic statutes and law apply to this case and can be generally accepted without argument. These are:

1. Defendant Sportswear Shoppe, Ltd. is a debtor-in-possession in this Chapter 11 bankruptcy proceeding, and therefore has all of the powers, rights and duties of a trustee, as provided in § 1107 of the Bankruptcy Code.

2. By virtue of the provisions of the Bankruptcy Code, the debtor-in-possession, identical to a bankruptcy trustee except in certain matters not relevant in this adversary proceeding, occupies the position granted to a trustee under § 544 of the Bankruptcy Code. Under § 544(a) of the Bankruptcy Code, the trustee has, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by what is variously referred to as a "hypothetical lien creditor" or an "ideal lien creditor" or "judgment creditor" or "bona fide purchaser of real property from the debtor".

3. With respect to the priority right of "lien creditors", § 400.9–301(1), Revised Statutes of Missouri (RSMo), provides:

"(1) Except as otherwise provided in subsection (2), an unperfected security interest is subordinate to the rights of

\*    \*    \*    \*    \*    \*

(b) a person who becomes a lien creditor without knowledge of the security interest and before it is perfected; \* \* \* "

Subparagraph (3) of § 400.9–301 further states that a "lien creditor" includes a trustee in bankruptcy "from the date of the filing of the petition."

4. With respect to the formal requisites of financing statements, § 400.9–402, RSMo, provides:

"(1) A financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral. * *

\*      \*      \*      \*      \*      \*

(3) A form substantially as follows is sufficient to comply with subsection (1):

Name of debtor (or assignor) ..........

Address ...........................

Name of secured party (or assignee) .....

Address ...........................

1. This financing statement covers the following types (or items) of property:

(Describe) .........................\*\*\*

\*      \*      \*      \*      \*      \*

(5) A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading."

5. With respect to the improper filing of a financing statement, § 400.9–401(2), RSMo, provides:

" * * *

(2) A filing which is made in good faith in an improper place or not in all of the places required by this section is nevertheless effective with regard to any collateral as to which the filing complied with the requirements of this article and is also effective with regard to collateral covered by the financing statement against any person who has knowledge of the contents of such financing statement.

* * * "

6. Applicable Law—in this adversary proceeding, the law which determines whether or not a security interest is perfected is state law and the law which determines the powers and rights and duties of a debtor-in-possession and the consequences of perfecting a security interest or failing to perfect a security interest is federal law, i.e. the Bankruptcy Code. Plaintiff concedes in its Memorandum of Law that Plaintiff did not file financing statements on UCC–1 forms with the Missouri Secretary of State and Miller County Recorder of Deeds showing Sportswear Shoppe, Ltd., its debtor, as the Debtor, but filed financing statements in the respective offices showing the Debtor to be as follows:

"MARCH, ROBERT L. & JACQUELINE B.

d/b/a Knifebird Indian Shop

d/b/a Gingerbread House

Route 1, Box 362D

Lake Ozark, Missouri 65049"

Plaintiff points out in its Memorandum of Law that on the lower left-hand side of the UCC–1 form, in the place designated "Signature(s) of Debtor(s)", the signature appearing was:

/s/"Sportswear Shoppe, Ltd    (sic)

By Robert L. March, Pres."

Plaintiff has agreed in the Stipulation of Facts (paragraphs 5 and 6) that a search of the offices of the Secretary of State of Missouri and the Miller County Recorder of Deeds with respect to Sportswear Shoppe, Ltd. and Citizens Bank of Eldon as a secured creditor of Sportswear Shoppe, Ltd. disclose no security interest or UCC–1 on file in the name of Sportswear Shoppe, Ltd. as Debtor and Plaintiff as the secured party. Plaintiff also concedes at page 5 of its Memorandum of Law that a search under the name "Sportswear Shoppe, Ltd." without also including the names of Robert L. March and Jacqueline B. March would not have disclosed the UCC–1 filed by Plaintiff bank. Presumably the Plaintiff would also concede in its Memorandum of Law that the same situation would occur with the Miller County Recorder of Deeds, however, if the filing of the financing statement with the Missouri Secretary of State is defective, then there is no perfection of the security interest.

Contrary to the statement at page 4 of Plaintiff's Memorandum of Law, there are a number of cases dealing with precisely the situation involved in this adversary proceeding, i.e. where there are two entities and the secured party has filed under the entity which does not own the collateral. The leading case, which is identical to the case at bar, is *Matter of Lintz West Side Lumber, Inc.*, 655 F.2d 786 (Seventh Circuit 1981), decided July 28, 1981. In the *Lintz*

case, the creditor bank had filed under the name of the principal owners, directors and officers of the bankrupt corporation and not under the name of the debtor corporation, the identical situation in the case at bar. The bank filed under the name of John and Mayella Lintz instead of Lintz West Side Lumber, Inc.

The bank argued that since the bankrupt was a close corporation located in a small town that a filing under the John and Mayella Lintz was sufficient to provide notice of the bank's security interest to other creditors in the community. The Seventh Circuit, affirming the District Court, agreed with the District Court that the bank's failure to include the correct name of the debtor corporation in the financing statement was seriously misleading because subsequent creditors had to depend upon a government official to search state records for the financing statement. The Court further stated that as a duly constituted corporation, Lintz West Side Lumber, Inc., was a legal entity separate and distinct from John and Mayella Lintz (whose names appeared on the financing statement) and that a creditor would ordinarily, and could reasonably, assume that *corporate* assets would not be encumbered by a security interest filed under the names of the individuals despite the similarity in the names.

The Court further stated that unless a creditor requested a search for the security interest held by others in the Lintz personal property, the bank's security interest would not be found. The Court concluded that under these circumstances they could not say that the names of the debtors were sufficiently similar to provide a creditor or official searching the records on behalf of a creditor with reasonable notice of the bank's security interest.

In the *Lintz* opinion, at page 791, the Court distinguishes the case of *In re Platt*, 257 F.Supp. 478 (E.D.Pa.1966) cited by Plaintiff in its Memorandum of Law herein and pointed out that in the *Platt* case the only entity was a human being, Henry Platt, with a trade name Platt Fur Company and that there was not a corporate enti-

ty separate from the human debtor. In the instant case, the names Robert L. and Jacqueline March are entirely distinctive from Sportswear Shoppe, Ltd. and no state or county official searching under Sportswear Shoppe, Ltd. would find the Robert L. and Jacqueline March filings by the Plaintiff; indeed, the Stipulation of Facts herein shows that the state and county officials do not find and report anything on Sportwear Shoppe, Ltd. where the search is conducted under Robert L. and Jacqueline March.

The Seventh Circuit Court in *Lintz* further held that although the bank entered into the security agreement in good faith and without intent to defraud creditors, the result was not altered and that the bank's good faith was not at issue and that good faith is only a necessary, not a sufficient, condition for perfection under the Uniform Commercial Code. The result reached in the *Lintz* case is merely the latest of a series of cases holding that the name of the real owner of the collateral must be shown in the financing statement if the security interest is to be deemed perfected.

In the case of *In re Leichter*, 471 F.2d 785 (Second Circuit 1972), the Court held that where the legal debtor was a human being named Matthew R. Leichter and the secured creditor filed the financing statement under the name "Landman Dry Cleaners" an assumed name for Mr. Leichter, that such filing was defective because subsequent creditors looking under "Leichter" would not be led to find the security interest filed and indexed under "Landman". The Court in *Leichter* also distinguished its earlier decision in *In re Excel Stores, Inc.*, 341 F.2d 961 (Second Circuit 1965) cited by Plaintiff. The Court pointed out that in the *Excel Stores* case there was only one corporate entity and the discrepancy amounted to a filing under "Excel Department Stores" rather than "Excel Stores, Inc.". The Seventh Circuit in *Leichter* contrasted the *Excel Stores* situation with the *Leichter* situation and in addition cited other cases supporting the view in *Leichter*; see 471 F.2d at p.787.

Another case holding that showing the incorrect debtor in the financing statement is defective as far as perfection is concerned, is *In re Eady*, 4 B.R. 1 (U.S.Bkrtcy., N.D.Ga., Atlanta Division 1979), in which the financing statement was indexed under the corporation name but the assets were owned by the corporation's president individually and the Court found that the security interest was not perfected even though the debtor had misrepresented that the corporation was the owner of the property and even though the debtor signed the security agreement as president of the corporation, nevertheless, the unperfected security interest was subordinate to the rights of the trustee in bankruptcy under § 544(a).

The *Eady* case is cited in Plaintiff's Memorandum of Law and Plaintiff admits that the case "cuts against Plaintiff". Plaintiff also states at pages 4–5 of Plaintiff's Memorandum of Law that in the *Eady* case the trustee did not have actual knowledge of the prior security interest. There appears no direct reference to whether or not the trustee did have actual knowledge of the prior security interest in the *Eady* case in the opinion, but whether or not the trustee did have such knowledge is irrelevant as will be developed herein later.

Another case holding that a financing statement filed in the name of the corporation's president was insufficient to perfect a security interest in property of the debtor corporation, the identical situation in the case at bar, is *In re Janmar, Inc.*, 4 B.R. 4 (U.S.Bkrtcy., N.D.Ga., Atlanta Division 1979), a companion case to the *Eady* case previously cited herein, in which a secured creditor was ruled not perfected because the filing was in the name of the corporation's president when the assets were actually owned by the corporation. At page 8 of the *Janmar* decision the Court states that the difficulty of finding a financing statement filed under "Eady" while searching for a filing under "J" is clear and the Court finds that the financing statement was not sufficient to perfect the security interest.

Other cases holding that the failure to identify the actual owner of the assets in the financing statement does not constitute perfection are: *Matter of Pasco Sales Co., Inc.*, 52 A.D.2d 138, 383 N.Y.S.2d 42 (1976), citing Leichter with approval; *In re Thomas*, 466 F.2d 51 (Ninth Circuit 1972), cited with approval in *Leichter* and pointing out that a filing under the name "West Coast Avionics" does not provide notice of a security interest granted by "Burris Haley Thomas". See also the cases cited in footnote 3 at page 53 of the *Thomas* case.

The above-cited authorities show that there is a substantial body of authority which is unanimous that where the filing is under a name that is significantly different from the actual owner of the collateral or where the filing is under an entity which is legally different from the actual owner of the collateral, (even if the names are virtually identical, Lintz versus Lintz Westside Lumber, Inc.), the financing statement is held to be defective and is not sufficient to constitute perfection of the security interest.

Plaintiff's Memorandum of Law cites no case supporting the proposition that filing under "March, Robert L. and Jacqueline B. . . . ." is sufficient to notify creditors of Sportswear Shoppe, Ltd. Indeed, the only case in point cited by Plaintiff, the *Eady* case is against Plaintiff, as it admits, and the second case cited is not in point because there was cross-indexing which Plaintiff admits the Missouri Secretary of State does not use—see page 5 of Plaintiff's Memorandum of Law.

The other cases cited by Plaintiff at pages 5–6 of its Memorandum of Law deal with minor misspelling with respect to one entity and not with failing to file with respect to a corporation and filing instead under a human being affiliated with a corporation. The *Leichter* case, which Defendant has referred to considerably herein, is acknowledged by Plaintiff at page 6 of its Memorandum of Law and is even more telling because in that case the Court held the financing statement was not valid even though there was only one entity, a human being, involved.

Plaintiff in the last portion of its Memorandum of Law tries to put forth the proposition that since the officers of the corporation, Sportswear Shoppe, Ltd., had actual knowledge of the financing statements and its contents, somehow the debtor-in-possession is deprived of its rights and powers as a trustee in bankruptcy under § 1107 of the Bankruptcy Code.

This argument is without merit. It is axiomatic that the entire purpose of granting the debtor-in-possession the identical powers of a trustee in bankruptcy under § 1107 is to make sure that creditors as a whole are treated fairly regardless of whether the proceeding is a Chapter 11 proceeding or a Chapter 7 liquidation proceeding. Referring to § 1107, the House of Representative and Senate reports on the new Bankruptcy Code provide that: "This section places a debtor-in-possession in the shoes of a trustee in every way. The debtor is given the rights and powers of a Chapter 11 trustee. He is required to perform the functions and duties of a Chapter 11 trustee (except investigative duties)...." H.R.Rep.No. 595, 95th Cong., 1st Sess. 404 (1977); S.Rep.No. 989, 95th Cong., 2d Sess. 116 (1978), U.S.Code Cong. & Admin.News, p.5787.

*Collier on Bankruptcy, Fifteenth Edition*, Vol. 5 at p. 1107–3 states: "First, the functions and duties of a Chapter 11 trustee which the debtor-in-possession must perform not only include those specified in § 1106(a) but also those duties set forth in Chapters 3 and 5, which chapters are applicable to Chapter 11 cases." Also see *Collier on Bankruptcy, Fifteenth Edition*, Vol. 5 at p. 1107–5 where it is stated: "It should also be noted that the debtor-in-possession has the rights of a trustee under § 544(a) which provides that the trustee has, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of...." As previously noted herein, § 544(a) specifically provides that the trustee shall have, ".... as of the commencement of the case, and *without regard to any knowledge of the trustee or of any creditor*, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by...." (Emphasis added). Therefore, there is no basis for a requirement that the debtor-in-possession be without knowledge of the security interest in order to perform the duties commanded it by § 1107 and the other sections of the Bankruptcy Code.

Furthermore, there are several "Old Act" cases squarely in point where the Bank's argument is expressly rejected. As noted in *8 Collier on Bankruptcy, Fourteen Edition*, Section 6.32 [7.2], [7.3], and [7.5] at pages 943–950. See *In re Martin Custom Made Tires Corporation* (2nd Cir., 1939) 108 F.2d 172; *In Re J. R. Cianchette & Sons Corp.* (D.Me.) 198 F.Supp. 740; *Gardner-Denver Company v. C. J. Haslam, Inc.* (2nd Cir., 1963) 325 F.2d 208; *In Re Copeland* (D.Del.) 391 F.Supp. 134 and *In Re Gehrke Enterprises, Inc.* (Bkrtcy.,W.D.Wisc.) 1 B.R. 647.

The *Gehrke Enterprises* case was a Chapter XI proceeding in which the Bankruptcy Court held that where the creditor did not establish that it had perfected its security interest in certain vehicles as of the date on which the debtor commenced its Chapter XI proceeding, the creditor was not entitled to an Order compelling the debtor to surrender possession of the vehicles. The Court said:

"... the debtor-in-possession has rights to all personal property in its possession, superior to all but those who have complied with the perfection requirements of the applicable statutes. Leasing has failed to prove that as of August 10, 1979, it had perfected its security interest in the vehicles. Absent that proof, Leasing is not entitled to the relief it requested in this proceeding."

The *Copeland* case also recognizes this principal, 391 F.Supp. at page 144:

"If no security interest exists or if a security interest exists but is not perfected on the date of filing of a petition, the debtor-in-possession has rights to the collateral superior to that of the secured party."

Based upon the foregoing findings of fact and the applicable law, the Court concludes that Citizens Bank of Eldon is an unsecured creditor of the debtor-in-possession. Plaintiff's request that the debtor be required to amend its schedules is denied.