In re STEBOW CONSTRUCTION CO., INC., Debtor.

James J. CAIN, Trustee for Stebow Construction Co., Inc., Plaintiff,

v.

L.B. SMITH, INC., Defendant.

Bankruptcy No. 83–05515.
Adv. No. 85–0121.

United States Bankruptcy Court, D. New Jersey.

May 6, 1987.

**460**

Davis, Reberkenny & Abramowitz by Clarence P. Reberkenny, Cherry Hill, N.J., for James J. Cain, trustee.

Farr, Wolf & Lyons by William G. Wright, Bellmawr, N.J., for L.B. Smith, Inc.

### OPINION

ROSEMARY GAMBARDELLA, Bankruptcy Judge.

The matter presently before the court is a complaint filed by James J. Cain, the Trustee of the debtor's estate, against L.B. Smith, Inc. to avoid an alleged security interest held by L.B. Smith, Inc. in certain equipment.

The facts leading up to this proceeding as established from the pleadings and from the Stipulation of Facts filed with this court on February 18, 1986 are as follows. On September 27, 1983, Stebow Construction Co., Inc., the debtor herein, filed a petition under Chapter 11 of the Bankruptcy Reform Act of 1978 (hereinafter Bankruptcy Code). Subsequently, the case was converted to a proceeding under Chapter 7 of the Bankruptcy Code. By notice dated February 19, 1985, James J. Cain was appointed Trustee of the Chapter 7 bankruptcy estate by the United States Trustee.

On March 6, 1980, Carlton A. Sprague was a Vice President of the debtor, Stebow Construction Co., Inc. Carlton A. Sprague was authorized to execute promissory notes, financing statements and security agreements on behalf of Stebow Construction Co., Inc. The name of the debtor as indicated on the Certificate of Incorporation on file with the Secretary of the State of New Jersey is Stebow Construction Co., Inc. Stebow Excavating Co., Inc. is an unregistered trade name occasionally utilized by the debtor. Stebow Excavating Co., Inc. is a company in name only, since it has not been incorporated, and it has no officers. The debtor's correct corporate name is ascertainable by either obtaining a copy of the Certificate of Incorporation from the debtor or from the Office of the Secretary of State of the State of New Jersey.

On March 6, 1980, Carlton Sprague executed a promissory note on behalf of Stebow Excavating Co., Inc. payable to L.B. Smith, Inc. in the principal sum of $314,338.05. At the same time, Carlton A. Sprague, on behalf of Stebow Excavating Co., Inc., executed an "Installment Sale and Security Agreement" (Agreement) in favor of L.B. Smith, Inc. The Agreement covered certain itemized equipment. Also on March 6, 1980, Carlton A. Sprague, on behalf of Stebow Excavating Co., Inc., executed a UCC–1 Financing Statement in connection with the Agreement. On or about March 17, 1980, the UCC–1 Financing Statement was filed with the Office of the Secretary of State of the State of New Jersey under the name of "Stebow Excavating Co., Inc." L.B. Smith, Inc. listed the debtor as Stebow Excavating Co., Inc. rather than as Stebow Construction Co., Inc. on the UCC–1 Financing Statement. L.B. Smith, Inc., as holder of the above-described Promissory Note, Installment Sale Agreement and Financing Statement, claims herein that it has a valid secured interest in the subject equipment.

Subsequent to the execution of the above-described documents, L.B. Smith, Inc. assigned all of its right, title and interest in and to the Note, the Agreement and the Financing Statement and the equipment covered thereby to Philadelphia National Bank. Philadelphia National Bank has since reassigned its right, title and interest in and to the Note, Agreement and Financing Statement, and the equipment covered thereby to L.B. Smith, Inc.

The Trustee caused a UCC search to be made in the Office of the Secretary of State of the State of New Jersey in the name of the debtor, Stebow Construction Co., Inc. That search failed to reveal the alleged security interest claimed by either L.B. Smith, Inc. or Philadelphia National Bank. The search did, however, reveal numerous other security interests held in various pieces of equipment of the debtor, Stebow Construction Co., Inc.

The Trustee claims that by virtue of this error in naming the debtor, a search by the employees of the Office of the Secretary of State made at the request of creditors or by the Trustee would not disclose the alleged security interest held by L.B. Smith, Inc. in the subject equipment. Accordingly, the Trustee claims that pursuant to 11 U.S.C. § 544(a), he has the power to avoid the alleged security interest held by L.B. Smith, Inc. since L.B. Smith, Inc. failed to perfect its interest in the equipment.

The defendant, L.B. Smith, Inc., filed an Answer to the Trustee's adversary complaint, and a Counterclaim. Therein, L.B. Smith, Inc. admitted that the debtor was listed on the subject UCC–1 Financing Statement as "Stebow Excavating Co., Inc." rather than as Stebow Construction Co., Inc. L.B. Smith, Inc. asserts that the financing statement filed on March 17, 1980 substantially complies with N.J.S.A. 12A:9–402 and is effective to perfect L.B. Smith, Inc.'s interest in the equipment since the discrepancy in the debtor's name, if it exists, is not seriously misleading. By its counterclaim, L.B. Smith, Inc. asserts that there is due and owing to it from the debtor a sum in excess of $240,000.00 and demands judgment in its favor and against the Trustee declaring that L.B. Smith, Inc. has a valid, perfected and enforceable security interest in and to the subject equipment, which security interest is superior to and prior to all interest of the Trustee.

The Stipulation of Facts submitted herein set forth the following. The UCC indexing system maintained by the State of New Jersey is as follows. Index cards listing the debtor's name as it appears on the financing statement are maintained in the Office of the Secretary of State of the State of New Jersey. Anyone desiring to check whether any perfected security interests are held against a particular entity or individual, must provide the exact name of the entity or individual and must request that the personnel of the Office of the Secretary of State search the indexes. The personnel of the Office of the Secretary of State search only for financing statements bearing the exact name provided to them. Upon completing the search, the Secretary of State's Office issues a certificate indicating whether any financing statements were found under the exact name furnished to them. Although copies of the financing statements are available for public inspection, pursuant to N.J.Stat.Ann. § 12A:9–403(4)[1] a search of the statements cannot be made without requesting that a search of the index of the financing statements be conducted.

The Trustee argues that L.B. Smith Inc.'s use of the debtor's trade name, Stebow Excavating Co., Inc., rather than its

---

1. At the time of the filing of the UCC–1 filing statement in question, March 17, 1980, N.J.Stat. Ann. § 12A:9–403(4) provided as follows:

A filing officer shall mark each statement with a consecutive file number and with the date and hour of filing and shall hold the statement for public inspection. In addition, the filing officer shall index the statements according to the name of the debtor and shall note in the index the file number and the address of the debtor given in the statement. A financing statement covering collateral which is or is to become a fixture or fixtures, or crops growing or to be grown, shall also be indexed in the name of the record owner of the realty.

N.J.S.A. § 12A:9–403(4) was amended by L.1981, c. 138, § 27, eff. Dec. 1, 1981. Changes were made in the statute as follows:

Except as provided in subsection (7), a filing officer shall mark each statement with a file number and with the date and hour of filing and shall hold the statement or a microfilm or other photographic copy thereof for public inspection. In addition, the filing officer shall index the statements according to the name of the debtor and shall note in the index the file number and the address of the debtor given in the statement. A financing statement covering collateral which is or is to become a fixture or fixtures, or crops growing or to be grown, shall also be indexed in the name of the record owner of the realty.

corporate name, Stebow Construction Co., Inc., on the subject financing statement is "seriously misleading" within the meaning of N.J.Stat.Ann. § 12A:9–402(8)[2] and is a fatal defect in the financing statement. Further, the Trustee argues that since in New Jersey, the public does not have access to the indexes of filed financing statements, if a financing statement contains an error in the name of the debtor, a search by an employee of the Office of the Secretary of State would fail to reveal the financing statement since the employee would check only the name given by the searcher.

L.B. Smith, Inc. argues that a financing statement need not be precisely accurate to be effective. L.B. Smith, Inc. contends that so long as a reasonable search under the debtor's correct name would reveal the filing, the financing statement would be effective.

In their Stipulation of Facts, the parties stated:

> Hypothetically, if a searcher (other than Secretary of State personnel) had access to the index cards, maintained as aforesaid by the Secretary of State in alphabetical order, the fact that there are no cards between those for Stebow Construction Co., Inc. and Stebow Excavating Co., Inc. plus the fact of similarity of address and the identity of the person signing on behalf of the debtor could have resulted in such searcher picking up the UCC–1 filed in the name of 'Stebow Excavating Co., Inc.' provided that such searcher conducted such search in a manner not limited to the exact corporate name furnished but rather expanding the search to cover similar names to ascertain if there has been any variation or error in the name of the debtor.

The trustee has brought this action pursuant to 11 U.S.C. § 544. Section 544(a) of the Bankruptcy Reform Act of 1978, in effect at the date of the commencement of this case (Bankruptcy Code), provides:

> (a) The trustee shall have, as of the commencement of the case, and without

regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists;
>
> (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; and
>
> (3) a bona fide purchaser of real property, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.

Under 11 U.S.C. § 544(a) a trustee in bankruptcy is vested with the status and powers of a lien creditor who extends credit to a debtor at the commencement of a case and at such time receives, in exchange, a judicial lien to secure the loan. A trustee with this lien creditor status may avoid an unperfected security interest that was valid between the debtor and a creditor. *See In re McGovern Auto Specialty, Inc.*, 51 B.R. 511 (Bkrtcy.E.D.Pa.1985).

Turning to the law governing the validity of the financing statement at issue, N.J. Stat.Ann. § 12A:9–402 enumerates the formal requisites of a financing statement. N.J.Stat.Ann. § 12A:9–402 provided in relevant part at the time the UCC–1 Filing Statement was filed in this case:

**2.** N.J.S.A. § 12A:9–402(5) was amended by L.1981, c. 138, § 26, eff. Dec. 1, 1981 to be N.J.S.A. 12A:9–402(8); no change was made in the text.

(1) A financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral. . . .

.     .     .     .     .

(5) A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading.[3]

As indicated by the 1972 Official Comment to the UCC, § 12A:9–402 contemplates a system of "notice filing." Under such a system, the filed notice indicates that the individual or entity that has filed the notice may hold a security interest in the collateral described in the notice. The adoption of a "notice filing" system was intended to abolish the rigid pre-Code requirements of chattel mortgage statutes where good faith mortgagees who inadvertently failed to comply with the rigid statutory requirements were often penalized. The "notice filing" system was designed to be a "simplified and workable filing system." *See* 1972 Official Comment to the UCC, N.J. S.A. § 12A:9–402.

Subsequent to the filing of the UCC–1 filing statement in question in this case N.J.S.A. 12A:9–402 was amended by L.1981, c. 138, § 26, eff. Dec. 1, 1981. This amendment, *inter alia*, added N.J.S.A. 12A:9–402(7) which states:

(7) A financing statement sufficiently shows the name of the debtor if it gives the individual, partnership or corporate name of the debtor, whether or not it adds other trade names or the names of partners. Where the debtor so changes his name or in the case of an organization its name, identity or corporate structure that a filed financing statement becomes seriously misleading, the filing is not effective to perfect a security interest in collateral acquired by the debtor more than 4 months after the change, unless a new appropriate financing statement is filed before the expiration of that time. A filed financing statement remains effective with respect to collateral transferred by the debtor even though the secured party knows of or consents to the transfer.

The 1972 Official Comment to the UCC provides, with regard to N.J.Stat.Ann. § 12A:9–402(7) and (8):

In the case of individuals, [§ 9–402(7)] contemplates filing only in the individual name, not in a trade name. In the case of partnerships it contemplates filing in the partnership name, not in the names of any of the partners, and not in any other trade names. Trade names are deemed to be too uncertain and too likely not to be known to the secured party or person searching the record, to form the basis for a filing system.

.     .     .     .     .

Subsection (8) is in line with the policy of this Article to simplify formal requisites and filing requirements and is designed to discourage the fanatical and impossibly refined reading of such statutory requirements in which courts have occasionally indulged themselves.

N.J.S.A. 12A:9–407 sets forth the mechanics of filing a financing statement. In March, 1980, N.J.S.A. 12A:9–407 provided as follows:

(1) If the person filing any financing statement, amendment, termination statement, statement of assignment, or statement of release, furnishes the filing officer a copy thereof, the filing officer shall upon request note upon the copy

---

**3.** N.J.S.A. § 12A:9–402(1) and (5) was amended by L.1981, c. 138, § 26, eff. Dec. 1, 1981, as follows:

(1) A financing statement is sufficient if it gives the name of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or description the items of collateral. . . .

(8) A financing statement substantially complying with the requirements of this section is effective though it contains minor errors which are not seriously misleading.

the file number and date and hour of the filing of the original and deliver or send the copy to such person.

(2) Upon request of any person, the Secretary of State may issue his certificate showing whether there is on file on the date and hour stated therein, any presently effective financing statement naming a particular debtor and any statement of assignment thereof and if there is, giving the date and hour of filing of each statement and the names and addresses of each secured party therein. The uniform fee for such a certificate shall be $10.00.[4] Upon request the filing officer shall furnish a copy of any filed financing statement, continuation statement, termination statement, statement of assignment, or statement of release for a fee of $1.00 per page.

Under N.J.S.A. 12A:9–403(1), "Presentation for filing of a financing statement, tender of the filing fee and acceptance of the statement by the filing officer constitutes filing under this chapter." Accordingly, a secured party is relieved of the risk of administrative errors by the filing officer once that party has presented a financing statement for filing with a tender of the filing fee. *See* New Jersey Study Comment No. 1, N.J.S.A. § 12A:9–403(1); Uniform Commercial Code Comment No. 1, N.J.S.A. § 12A:9–407(1), (accompanying L.1961, c. 120, §§ 9–403 and 9–407 respectively). These sections were not revised at the time of filing of the UCC–1 financing statement with the exception of the amount of fees in N.J.S.A. § 12A:9–407.

The case law regarding the erroneous naming of debtors on UCC financing statements is extensive. There are numerous cases which hold that an error in a filing statement relating to the name under which it was filed were so minor that the financing statement could be considered adequate to perfect the security interest. *See, e.g., In re McBee,* 714 F.2d 1316 (5th Cir.1983) (filing financing statement under the trade name "Oak Hill Gun Shop" rather than the individual name of the debtor

was sufficient to perfect the security interest against an objecting creditor, notwithstanding that it was a sole proprietorship, because the trade name was well-known to creditors, consistently and exclusively used to reference the business and a subsequent sale of the business by one individual to another individual raised the possibility of alternative filings so that any reasonable diligent searcher would probably have been more likely to discover this filing than one in either individual's name); *Matter of Glasco, Inc.,* 642 F.2d 793 (5th Cir.1981) (financing statement listing the debtor by the name in which it did business "Elite Boats, Division of Glasco, Inc." rather than its legal corporate name, "Glasco, Inc." was not seriously misleading where the debtor held itself out solely as "Elite Boats, Division of Glasco, Inc." the debtor's checks, stationery and bank account all bore that name, as did the debtor's bills, contracts and telephone listing, thus raising an inference that a reasonable prudent creditor would have requested the Secretary of State to search financing statements under that name as well); *Matter of Hammons,* 614 F.2d 399 (5th Cir.1980) (misspelling name of partner "Hammons" as "Hammonds" and adding the word center to the partnership's trade name of "Shady Grove TV and Appliance" was not so seriously misleading in the financing statement as to be ineffective); *In re Excel Stores, Inc.,* 341 F.2d 961 (2d Cir.1965) (use of the name "Excel Department Stores" instead of "Excel Stores, Inc." on the security agreement was a minor error and not seriously misleading so that any interested person searching the record will be put on notice that a lien existed against the debtor); *W.F.J., Inc. v. Bank of Tioga,* 605 F.Supp. 39 (D.N.D.1984) (use of the name "Tioga Air Heaters Co." rather than the correct name of "Tioga Air Heaters, Inc.", where both had been used as corporate names, was potentially misleading but, since the creditor who made a subsequent loan was familiar with the formation of Tioga Air Heaters, Inc. and with the history of Tioga Air Heaters Co. and was aware

---

**4.** N.J.S.A. 12A:9–407 was amended by L.1982, c. 52, § 4, approved June 30, 1982, effective 45 days after enactment, and changed the uniform fee to $15.00.

of the financing statement, the financing statement was not deficient); *In re Reeco Electric Company, Inc.*, 415 F.Supp. 238 (D.Me.1976) (where the debtors' names on two separate financing statements were listed as "Reeco Electric", rather than "Reeco Electric Company, Inc.", and "Petersbuilt Inc." rather than "Petersbuilt Incorporated", the financing statements contained "minor errors" and were not seriously misleading so to be sufficient to perfect the security interest in the assets of the debtors); *In re Central Wisconsin AG Supply, Inc.*, 36 B.R. 908 (W.D.Wis.1983) (where the name of the debtor on the financing statement was listed as "Central Wisconsin Ag Supply Company", rather than the correct name of "Central Wisconsin Ag Supply, Inc.", that error was minor and not seriously misleading for failing to properly delineate the corporate status of the debtor); *In re Air Vermont, Inc.*, 40 B.R. 323 (Bkrtcy.D.Vt.1984), *aff'd*, 45 B.R. 817 (D.Vt.1984) (omission of "Inc." in the corporate name of the debtor on the security agreement was a technical omission, a minor error not seriously misleading and did not render the security agreement invalid); *In re Maples*, 33 B.R. 14 (Bkrtcy.W.D.Mo.1983) (financing statement filed in the name of "Maples Machine Shop and Welding", rather than in the individual names of the debtors, "Loren Leo Maples and Grace Carolyn Maples" was not seriously misleading, since filing under a trade name is only defective where the trade name materially differs from the debtor's real name; the trade name was sufficiently related to the name of the debtor so to give notice of a possible prior existing interest to anyone searching the records, and there was no offer to show that the debtors did not do business under the name of "Maples Machine Shop and Welding"); *Matter of Clairmont Pharmacy, Inc.*, 8 B.R. 695 (Bkrtcy.N.D.Ga.1981) (although bankrupt was doing business as "Clairmont Skyland Pharmacy", erroneously recording the name of the bankrupt as "Clairmont Skyland Pharmacy, Inc.", on the bank's financing statement was a minor error and not seriously misleading).

There are an equally extensive number of cases which hold that incorrect identification of the debtor on the financing statement is significant enough to be seriously misleading and thus mandating a holding that the creditor failed to perfect its security interest. *See, e.g., In re McCauley's Reprographics, Inc.*, 638 F.2d 117 (9th Cir. 1981) (financing statement as well as underlying loan documents which listed the debtor as the partnership, "McCauley's Reprographics and Mapping", which was the partnership which preceded the corporation, "McCauley's Reprographics, Inc.", was seriously misleading and the security interest had not been perfected since there was no indication on the financing statement that the debtor was the corporation rather than the partnership, the financing statement may not have given notice that the debtor was the corporation rather than the partnership, and even if the searcher had inquired further, the search would have uncovered an underlying security agreement which contained an error just as seriously misleading as the financing statement); *Pearson v. Salina Coffee House, Inc.*, 61 B.R. 538 (D.Kan.1986) (listing the debtor's name on the financing statement under its trade name "Hilton Inn", which had no similarity to its legal name, "Beacon Realty Investment Co.," was misleading since a potential creditor searching under the legal name would have no reason to believe there was a prior security interest in the involved collateral nor would a potential creditor searching under the debtor's trade name be put on notice that a financing statement on the identical collateral might be indexed under another name of the debtor); *In re McGovern Auto Specialty, Inc.*, 51 B.R. 511 (Bkrtcy.E.D.Pa. 1985) (financing statement which erroneously stated the debtor's name as "McGovern Auto & Truck Parts, Inc.", rather than "McGovern Auto Specialty, Inc.", was seriously misleading so as to render the creditor's security interest invalid against the trustee since it was not shown that a reasonable searcher looking under "McGovern Auto & Truck Parts, Inc. would uncover "McGovern Auto Specialty Inc." or would be put on notice that the two names

identified the same entity); *In re My Place or Yours, Inc.*, 34 B.R. 197 (Bkrtcy.D.Vt. 1983) (financing statements which gave the name of the debtor as "Rick Storm & Rob Neibling d/b/a My Place or Yours" rather than under the name of the corporate debtor, "My Place or Yours, Inc.", did not substantially comply with the requirements for perfection of a lienor seller's security interest under relevant state law and contained errors that were seriously misleading since the financing statements were insufficient to put prospective creditors on inquiry notice that a purchase money security interest existed; there was no indexed entry in the name of the debtor or under any insignia bearing any resemblance to the debtor); *In re Amsco, Inc.*, 26 B.R. 358 (Bkrtcy.D. Conn.1982) (where the corporate records of the debtor reflected one legal name of "Amsco, Inc.", the use of "American Supply Company" on the financing statement was seriously misleading, notwithstanding that the debtor's prior name was American Supply Company, Incorporated); *In re LFT, Ltd.*, 36 B.R. 411 (Bkrtcy.D.Haw. 1984) (use of the debtor's trade name, "La Familia Restaurant" on the financing statement, rather than the real name of the debtor which was "LFT, Ltd.", and the name under which the debtor signed the purchase agreement and the financing statement, was seriously misleading and not a minor error even if the trade name was widely known and used); *In re Answerfone, Inc.*, 48 B.R. 24 (Bkrtcy.E.D.Ark. 1985) (where the name of "Americall-Little Rock, Inc." which only owned stock in the debtor, "Answerfone, Inc.", was listed on the financing statement, the lien was unperfected and invalid against the trustee in bankruptcy); *In re Sportswear Shoppe, Ltd.*, 15 B.R. 970 (Bkrtcy.W.D.Mo.1981) (financing statement which contained the name of the president and vice president of the debtor rather than the name of the debtor was invalid against the trustee of the debtors).

Although the results reached by these cases varies, the determining factor in most of these cases is whether the name or information listed on the financing statement is sufficient to give notice to creditors or other interested parties that a security interest exists in the property of a debtor. The information in the financing statement must be sufficient to put any searcher on notice or at least required to make further inquiry. *See e.g. Matter of Glasco, Inc.*, 642 F.2d 793, 795 (5th Cir.1981); *In re McBee*, 714 F.2d 1316, 1321 (5th Cir.1983); *In re Excel Stores, Inc.*, 341 F.2d 961, 963 (2d Cir.1965).

In the case of *In re Kittyhawk Television Corp.*, 516 F.2d 24 (6th Cir.1975), the court found that a financing statement which listed the debtor's name as "Kittyhawk Broadcasting Corporation," when the debtor's name had been changed to "Kittyhawk Television Corporation" was valid. In *Kittyhawk*, a company named Kittyhawk Broadcasting Corporation (Kittyhawk Broadcasting) was incorporated for the purpose of operating a television station. Kittyhawk Broadcasting purchased television equipment from RCA, which purchase was secured by two chattel mortgage agreements. The financing statements named Kittyhawk Broadcasting as the debtor and were filed by RCA in the office of the Secretary of State of Ohio and in the Office of the County Recorder. Thereafter, a second corporation was formed under the name of Kittyhawk Television Corporation (Kittyhawk Television), which had the same shareholders, officers and directors as Kittyhawk Broadcasting and occupied the same place of business. On the same date, the directors decided to transfer all assets and liabilities of Kittyhawk Broadcasting to Kittyhawk Television with the exception of an application for an AM radio license. RCA was informed of the change. Kittyhawk Television was subsequently adjudicated a bankrupt upon an involuntary petition. The court concluded that what had taken place in terms of the corporate transaction was a mere name change and not a sale or exchange. *Id.* at 27. The financing statement was never amended to reflect the name change from Kittyhawk Broadcasting to Kittyhawk Television. On the issue of the name of Kittyhawk Broadcasting appearing on the financing statement, the Sixth Circuit

Court of Appeals noted that this was not a case where there was an error in the original filing statement. Moreover, the court noted that the Uniform Commercial Code did not contain an express provision requiring a refiling or amendment of a financing statement. Rather, the Code required that if the filing statement is seriously misleading, it be amended to correct the inadequacy. *Id.* at 28. The *Kittyhawk* court concluded that the names of the debtor were sufficiently similar that a third party could reasonably be expected to be put on notice or at least to be required to make further inquiry and that the difference in names were minor and not seriously misleading. *Id.* at 29. Thus, the security interest was perfected and enforceable against the trustee in bankruptcy. *Id.* The *Kittyhawk* court explained its decision thusly:

Of course, the Code seeks to protect against the "secret lien," yet it also adheres to the concept of notice filing. In this conflict between two policies, we conclude that the names of the debtor were sufficiently similar that a third party could reasonably be expected to be put on notice or at least to be required to make further inquiry. This situation is to be distinguished from an intentional name change expressly provided for in the security agreement itself where the new name so provided for bears no resemblance to the former name of the debtor. In such a situation we have held that the threat of a secret lien outweighs any additional burden on the secured party to amend its financing statement or to file the security agreement itself as a financing statement as the Code permits. *See In re Kalamazoo Steel Process, Inc.,* [503 F.2d 1218 (6th Cir.1974)] *supra.* Since under the facts of a present case there was little danger of a secret lien, the difference in names should be considered as minor and not seriously misleading.

516 F.2d at 28–29.

In the present case, the court concludes that the use by L.B. Smith, Inc. of debtor's trade name, Stebow Excavating Co., Inc., instead of its corporate name, Stebow Construction Co., Inc., in the financing statement is not a minor error and is seriously misleading within the meaning of N.J.S.A. § 12A:9–402(8) (formerly § 12A:9–402(5)), *see* fn. 2, *supra* ), and that the financing statement does not substantially comply with the requirements of N.J. S.A. § 12A:9–402. This is not a case where the financing statement merely fails to indicate the debtor is a corporation or uses a word that is basically synonymous with a word in the debtor's name so that a diligent searcher would be put on notice to make further inquiry or conclude that Stebow Excavating Co., Inc. and Stebow Construction Co., Inc. identify the same entity. According to the stipulated facts herein, Stebow Excavating Co., Inc. is an unregistered trade name occasionally utilized by the debtor, so that a diligent searcher would not be more likely to discover this filing then one in the correct name of Stebow Construction Co., Inc. Nor is this a case as in *Kittyhawk* where there was no error in the original filing statement. Moreover, cases which hold that a creditor who is seeking to avoid a security interest had actual knowledge of the incorrect name on the financing statement so as to hold the security interest perfected are inapplicable to a case such as the present one. Pursuant to 11 U.S.C. § 544(a), the trustee's avoiding powers are without regard to any knowledge of the trustee or any creditor. *See In re Sportswear Shoppe Ltd.,* 15 B.R. 970, 975 (Bkrtcy.W.D.Mo.1981). This does not mean the name appearing on the financing statement must be absolutely perfect. "The trustee in bankruptcy is considered to be in the position of a hypothetical but prudent creditor." *Matter of Glasco, Inc.,* 642 F.2d 793, 796 (5th Cir.1981). The trustee cannot be charged with actual knowledge but should be taken to stand in the shoes of an ideal creditor who had no notice of the trade name used herein. An error that is seriously misleading is sufficient to allow the trustee to avoid the security interest. *See In re Amsco Inc.,* 26 B.R. 358, 363 (Bkrtcy.D.Conn.1982). The court holds, therefore, that the security interest alleged by L.B. Smith, Inc. in the subject equipment was not perfected due to

an error in the UCC–1 Financing Statement filed with the Secretary of State of the State of New Jersey on or about March 17, 1980. Accordingly, the trustee may avoid this alleged security interest in the subject equipment. The counterclaim of L.B. Smith, Inc. seeking a judgment that it has a valid, perfected and enforceable security interest in and to the subject equipment superior to and prior to the Trustee is denied.

An order in accordance with this opinion will be submitted.