This controversy rises from a chattel mortgage given by Abraham Cohen to Star Fixture Company, dated October 30th, 1933, and recorded the following day. It covered fixtures, equipment and lease of a delicatessen store, and secured $2,500 evidenced by two hundred and seven promissory notes, payable at weekly intervals, the first November 6th, 1933, and the last October 18th, 1937. The fixture company, very soon, sold $1,430 of the notes to defendant Brown, and *Page 564 
assigned to him the mortgage, and further, the company deposited with him $950 worth of the notes as collateral for the payment of the aforesaid sum of $1,430. So far as appears, the remaining notes, $120, were retained by the fixture company and paid in due course. At any rate, they do not appear in this suit. The notes given as collateral were of later maturity than those sold. The mortgage assignment was recorded November 22d 1933. Sometime thereafter, Brown surrendered to the fixture company the notes held as collateral and that company gave them to one Brangan, who in turn transferred them to Abrams, the complainant. Abrams already held a mortgage on real estate of Brangan and he agreed to give credit on the mortgage for the amount paid him on the notes. Complainant was told when Brangan gave him the notes that they were secured by a chattel mortgage held by Brown.
After a while, Cohen fell behind in his payments and on July 27th, 1936, a constable, as Brown's agent, held a chattel mortgage sale and at Brown's direction struck off the mortgaged chattels for $200 to the highest bidder, the Elks Investment Company, a corporation owned by Brown. Brown was aware that complainant held some of the notes and claimed an interest in the mortgage. But Brown gave him no notice of the sale, and complainant did not learn of it until the following winter. Elks Investment Company, on August 3d, sold the chattels and lease to one Harry Gottlieb for $810, which was the approximate amount due Brown on the notes held by him. On February 16th, 1937, Gottlieb resold to the defendant Mollie Teitelbaum for $2,208.50. Mrs. Teitelbaum had no knowledge or notice of any interest of Abrams in the original Cohen mortgage or in the chattels.
On May 31st, 1937, Abrams filed his bill.
What were complainant's and Brown's rights and priorities in the mortgage at the time of the foreclosure sale? A mortgage securing several notes secures them all equally. When the mortgagee assigns some of the notes to one party and others to another, the assignees are entitled to share pro rata in the proceeds of the security regardless of the order of the *Page 565 
assignments, or of the maturity of the notes. Such is the general rule adopted in this state. Kelly v. Middlesex Title Guaranteeand Trust Co., 115 N.J. Eq. 592, 596; affirmed, 116 N.J. Eq. 574.
But, as pointed out by Vice-Chancellor Buchanan in that case, this is "a rule of equity and its operation may be modified or suspended in any particular case where such a course is necessary in order to do equity under the particular circumstances." In the case before me, Star Fixture Company assigned to Brown the entire legal interest in the chattel mortgage and also gave him as further security those of the notes mentioned in the mortgage, which are now held by complainant. These circumstances are enough to show the intention of the parties that the notes sold to Brown should be preferred and so take the case out of the general rule above mentioned.
But though the entire legal title to the mortgage was transferred to Brown, the mortgage still secured the notes in which complainant is interested; the encumbrance on Cohen's chattels was not reduced in amount. Brown held the mortgage primarily for his own benefit, but secondarily for the benefit of complainant. Had Brown resorted to court to foreclose his mortgage, complainant would have been a necessary party.Chapman v. Hunt, 14 N.J. Eq. 149. But instead Brown proceeded to sell by virtue of the power contained in the mortgage. It was incumbent upon him to give notice of the sale to complainant so that complainant might have opportunity to protect himself, or failing to give such notice, Brown himself had to protect complainant by obtaining the fair price of the property sold. Chancellor Green, in a controversy between mortgagor and mortgagee in which the mortgagee had disposed of part of the chattels at private sale, said, "the creditor will be held at his peril to deal fairly and justly with the property both as to the time of the notice and the manner of the sale." And that if the mortgagor could show "that the articles were sold unfairly and at an under price, he will be permitted to do so and will be allowed their fair value." Bird v. Davis, 14 N.J. Eq. 467. When a chattel mortgage is void as to creditors, the mortgagee who *Page 566 
sells, is liable to the creditors for the value of the chattels.Arnesto Paint Co. v. Brush, 117 N.J. Eq. 368.
Brown was a quasi-trustee for complainant and is liable for the loss which complainant has sustained. Unless counsel can agree on the figures, there may be a reference to determine the amounts due Brown and complainant, and the value of the mortgaged property.
Complainant asks that the chattel mortgage sale and the sale to Mrs. Teitelbaum be set aside. This cannot be done, since the legal title is good and Mrs. Teitelbaum was unaware of complainant's equity. The prayers for relief may have to be amended, but I will hear counsel on that. As to the defendants other than Brown, the bill will be dismissed with costs.