In re William A. JACKSON, d/b/a Jackson Jewelers, Bankrupt.

Sam J. McALLESTER, III, Trustee, Plaintiff,

v.

William A. JACKSON and First American National Bank of Nashville, Defendants.

Bankruptcy No. 79–30477.

United States Bankruptcy Court, M. D. Tennessee.

June 30, 1980.

Sam J. McAllester, III, Nashville, Tenn., for plaintiff.

Sterling Minor, Nashville, Tenn., for defendant William A. Jackson.

Keith B. Simmons, Nashville, Tenn., for defendant First American National Bank.

## MEMORANDUM

RUSSELL H. HIPPE, Jr., Bankruptcy Judge.

This adversary proceeding between the trustee and a bank, which asserts perfected security interests in the bankrupt's inventory, equipment, and fixtures, presents what appears to be a question of first impression regarding the assignment of security interests under the Uniform Commercial Code (hereinafter referred to as the Code). The bank made three loans to the bankrupt, the sole proprietor of a small retail jewelry store. The initial loan was guaranteed by the Small Business Administration (hereinafter referred to as SBA). At the closing of that loan, the bankrupt executed a promissory note and two security agreements, one granting a security interest in inventory and the other in equipment and fixtures. Both security agreements contained future-advance clauses. A financing statement was filed with the secretary of state accurately describing the types of collateral and listing the bankrupt as the debtor and the bank as the secured party. Subsequent to making the SBA-guaranteed loan, the bank made two additional loans to the bankrupt which were evidenced by separate notes. Neither of these loans was guaranteed by SBA. Pursuant to the future-advance clauses in the security agreements, these loans also were secured by the bankrupt's inventory, equipment, and fixtures. The trustee readily concedes that as long as the bank held the notes and the security agreements it had valid and properly perfected security interests in the collateral securing repayment of all three loans.

When the bankrupt defaulted on his obligations, the bank called upon SBA to honor its guaranty. At the request of SBA, the bank transferred to it the first note and the security agreements. The bank also executed an SBA assignment form by which it transferred and assigned to SBA "all of its right, title and interest" in those instruments. The bank also executed a statement which was filed with the secretary of state containing a block captioned "Assignment," which was checked and included the following printed language:

> The Secured Party certifies that the Secured Party has assigned to the Assignee whose name and address is shown below. [sic] Secured Party's rights under the financing statement bearing the file number shown above in the following property:

The name and local address of SBA were entered. No property was described. Accurate reference to the original financing statement apparently was made. Shortly after this statement was filed, the bankrupt filed his voluntary petition.

By agreement between the parties, the inventory, equipment, and fixtures have been sold. The proceeds were applied to pay in full the SBA-guaranteed loan. The bank insists that the balance should be applied toward payment of the two non-SBA notes which it holds. The trustee insists that his interest in these funds is superior to that of the bank.

It is the position of the trustee either that the bank transferred all of its security interests to SBA or that the bank's security interests became unperfected by virtue of the filing of the statement of assignment. The bank insists that it had no intention of adversely affecting the non-SBA loans by the transaction with SBA and asserts that in assigning to SBA its rights under the security agreements and financing statement it neither disposed of nor lost its perfected status with respect to the security interests in the collateral securing payment of the two non-SBA notes which it continued to hold.

The parties have not cited and this court has been unable to locate a reported decision under the Code which deals with this particular situation.

The basic position of the bank, as viewed by the court, is that an absolute, unqualified assignment of a security agreement and financing statement does not of itself divest a creditor of security interests in the collateral described in those instruments. The decision which is most supportive of the bank's position is *Abrams v. Brown*, 122 N.J.Eq. 563, 195 A. 810 (1937), a pre-Code case involving a chattel mortgage which secured payment of more than two hundred separate notes. The mortgage and some of the notes were transferred to Brown by an absolute, unqualified assignment. Abrams became the holder of the balance of the notes. The New Jersey court noted the general rule that the assignment of a secured note carries with it the security but held that when the entire legal interest in a chattel mortgage is assigned to the holder of one or more of the notes secured thereby the assignee holds the mortgage primarily for his benefit but the other notes continue to be secured thereby, although in a secondary position. Thus the court concluded that it was incumbent upon the assignee to give to the holder of the other notes notice of any proposed disposition of the collateral.

Tennessee courts have recognized the general rule that the assignment of a secured note carries with it the security for its payment. *Hamilton v. Fowler*, 99 F. 18

(6th Cir. 1899); *Neely v. Clarence Saunders Co.*, 169 Tenn. 30, 81 S.W.2d 390 (1935); *Clark v. Jones*, 93 Tenn. 639, 27 S.W. 1009 (1894); *McCallum v. Jobe*, 68 Tenn. (9 Baxter) 168 (1877); *Cleveland v. Martin*, 39 Tenn. (2 Head) 128 (1858); *Hudson v. Evans*, 21 Tenn.App. 535, 113 S.W.2d 407 (1938); *Jackson Bros. v. Harpeth Nat'l Bank*, 12 Tenn.App. 464, *cert. denied* (1931). Although there does not appear to be any reported Tennessee decision which addresses the issue before the court in *Abrams*, this court is of the opinion that Tennessee courts would have reached the same result prior to the advent of the Code. The Code became effective in this state on July 1, 1964, and is codified as § 47–1–101 *et seq.* of the Tennessee Code. Does its adoption require a different result? In addition, in *Abrams* the court did not consider the rights in the collateral of the original debtor's general unsecured creditors. Thus this court also must determine whether the interests of such creditors as represented by the trustee affect the result.

In addressing these issues the court has turned initially to a law review article by David G. Epstein, now Dean of the Arkansas University School of Law. Epstein, *Security Transfers by Secured Parties*, 4 Ga.L. Rev. 527 (1970). This is not the first court to benefit from this article. *See Empire Machinery Co. v. Union Rock & Materials Corp.*, 24 UCC Rep.Serv. 232 (Ariz.App. 1978). Although Dean Epstein addresses only the situation in which payment of a single debt is secured by a security interest evidenced by a single security agreement, he nevertheless reaches two general conclusions which are pertinent to resolving the issues before this court.

First, Dean Epstein concludes that the pre-Code general rule that the transfer of a secured note alone effected a transfer of both the note and its security is not altered by the Code. 4 Ga.L.Rev. at 540. Second, having noted that under pre-Code law the transfer of the security agreement alone was of no effect, he concludes that this result is not altered by the Code (with the exception of the repledge of pledged collat-

eral pursuant to § 9–207, which is not pertinent to this proceeding). 4 Ga.L.Rev. at 538, 540.

◼ The application of these principles to the situation in which the same collateral secures payment of more than one obligation leads to the conclusion that the transfer of a security agreement would be of no effect unless and then only to the extent that the secured obligations were also transferred. As under pre-Code law, secured notes retained by the assignor continue to be secured by the collateral.

◼ The Code makes a distinction between the security interest and the security agreement. The latter is defined in Code § 9–105(h) as "an agreement which creates or provides for a security interest," which in turn is given the basic definition in § 1–201(37) of "an interest in personal property and fixtures which secures payment or performance of an obligation." Thus by definition a security interest is inseparably linked to an obligation. The transfer of a security agreement by which security interests are created does not result in the transfer of any security interest. The security interest is transferred with the obligation. In this proceeding the security interest transferred to SBA was the interest in the collateral which secured payment of the SBA note. There was no transfer of the interests in the collateral which secured payment of the non-SBA notes which the bank continued to hold.

◼ The court concludes therefore that the adoption of the Code does not change the result in *Abrams v. Brown*.

This conclusion does not dispose of the interest in the collateral asserted by the trustee. Even if the bank retained its security interests, the trustee will prevail under bankruptcy law and the Code if the security interests are not perfected.

The only mention in the Code of the assignment of security interests is in connection with the notice filing requirements. Section 9–302(2) provides that

[i]f a secured party assigns a perfected security interest, no filing under this chapter is required in order to continue the perfected status of the security interest against creditors of and transferees from the original debtor.

Thus, if the bank had transferred only the note to SBA, there would be no question but that payment of all three notes continued to be secured by perfected security interests in the collateral.

Section 9–405 basically provides that a "financing statement may disclose an assignment of a security interest in the collateral described in the statement" or a "secured party may assign of record all or a part of his rights under a [previously filed] financing statement" and after such disclosure "the assignee is the secured party of record." The official comments indicate that this provides a "permissive device whereby a secured party who has assigned all or part of his interest may have the assignment noted of record" and suggest that the assignor might wish to have this done in order that inquiries be directed to the assignee. Not surprisingly, Professor Gilmore agrees. 1 G. Gilmore, Security Interests in Personal Property § 15.3 (1965). It is the assignee, however, who receives the more substantial benefits from such a filing, particularly since it provides the assignee with protection against creditors of the assignor. In addition, by becoming the secured party of record, the assignee may file a continuation statement under § 9–403, a termination statement under § 9–404, and a statement of release under § 9–406. Since the assignee has the dominant interest in the filing of such statement and because § 9–405(1) expressly provides that statements of assignment may be executed by the assignee alone, it appears to this court that such statements are not intended to affect the rights of the assignor in the collateral.

Although the court has been unable to locate any reported opinions directly on point, there are two that discuss the effect of the filing of statements reflecting an assignment which are helpful.

■ In *Mills Morris Co. v. Scanlon (In re King-Porter Co.)*, 446 F.2d 722 (5th Cir. 1971), the court was concerned with the effect of noting an assignee on the original financing statement in addition to the secured party. The secured party subsequently assigned to the designated assignee a few security interests in certain specified items of collateral. In a contest with the debtor's bankruptcy trustee, the secured party asserted that it had a perfected security interest in the balance of the collateral. The court held that the effect of the filing of a financing statement with an assignee designated was that the assignee became the *secured party of record* only. 446 F.2d at 728. The court indicated that the filing of such a notice did not constitute a substantive assignment, a result obviously consistent with this court's view that there can be no substantive assignment of a security interest without a transfer of the secured obligation. That court noted pertinently:

In this instance no creditor could have been misled by the inclusion in the financing statement that the bank was the secured party of record. Indeed, under the Code's system of "notice" filing, the recorded statements indicate merely that the secured party of record *may* have a security interest in the collateral described. Further inquiry is necessary to disclose the complete state of affairs. U.C.C. § 9–402, Comment 2.

446 F.2d at 729.

In *King-Porter*, inquiry of the assignee would not have revealed any pertinent information about what security interests the assignor might have. Such an inquiry would only have revealed the extent to which security interests had been transferred to the assignee. Thus that case must stand for the general proposition that when there is notice of an assignment, third parties must inquire both of the assignor and of the assignee as to the status of their security interests. If there can be no assignment of a security interest without transfer of the obligation secured thereby, third parties must make inquiry as to the status of the secured obligations themselves and should not be satisfied with an assign-ment of the security agreement as evidencing that the assignor no longer has any security interests in the collateral.

While *King-Porter* involved a designation of assignee in the original financing statement, in the case of *Kreling v. First National Bank & Trust Co. (In re Webster)*, 20 UCC Rep.Serv. 802 (Bankr.Ct.W.D.Mich. 1976), a bankruptcy court considered the effect of the subsequent filing of a statement of assignment. The statement indicated that the assignor had transferred all of its interest under the previous financing statement. The assignor did not transfer its security interest in a particular item of collateral. Noting that once there has been perfection by filing a security interest remains perfected even though there are such significant changes in circumstances as change in the use of the collateral or change in the name of the debtor, that court indicated that the effect of *King-Porter* was to "put all inquiring parties on notice that inquiry of the assignee alone is not sufficient." 20 UCC Rep.Serv. at 806.

■ In *Empire Machinery Co. v. Union Rock & Materials Corp.*, 24 UCC Rep.Serv. 232 (Ariz.App.1978), the court cited Dean Epstein's law review article for this proposition:

[b]oth logic and the basic framework of the Code seem to indicate that transfer by a secured party of both the note and security agreement terminates all his rights, duties and interests thereunder.

24 UCC Rep.Serv. at 240. That statement and the result reached in that case are consistent with the views expressed herein. In *Empire Machinery* the secured creditor had assigned an installment sales contract to a bank and had filed a statement of assignment. The installment sales contract included both the security agreement and the obligation to pay. Thus the security interest was transferred to the assignee. Since there were no other security interests in this collateral, the assignor retained no security interest in it. The court in *Empire Machinery* concluded that when the assignor acquired a subsequent security interest

in the same collateral it was necessary to file again to perfect that security interest. This court agrees.

For the foregoing reasons it is the opinion of the court that the bank retained perfected security interests in the collateral to secure payment of the two non-SBA notes.

An appropriate order will be entered awarding the proceeds at issue to the bank for application to the two non-SBA notes.