**In re AMSCO, INC., d/b/a American Supply Company, Inc., Debtor.**

**Bankruptcy No. 5–82–00721.**

United States Bankruptcy Court, D. Connecticut.

Dec. 23, 1982.

December 15, 1982. A hearing on adequacy of the disclosure statement is scheduled for January 13, 1983. 11 U.S.C.A. § 1125 (1979).

## MEMORANDUM AND ORDER

ALAN H.W. SHIFF, Bankruptcy Judge.

On June 21, 1982, AMSCO, Inc. (debtor) filed a petition under Chapter 11 of the United States Bankruptcy Code. In the course of postpetition proceedings before this court during which the debtor sought to borrow funds, controversy arose surrounding the status of Arco Comfort Products' (Arco) alleged lien, in *inter alia,* certain "air conditioning systems" of the debtor.

The debtor, Walter E. Heller & Company of New England, Inc. (Heller), the Creditors' Committee and Arco came before the court for an evidentiary hearing. They thereafter submitted briefs and participated in oral argument at which time the court reserved decision on the questions addressed below.

### I.

### DID ARCO OBTAIN A VALID SECURITY INTEREST?

The debtor is a distributor of heating and cooling equipment, accessories and parts. Commencing sometime prior to 1979, the debtor and Friedrich Air Conditioning and Refrigeration Company (Friedrich) engaged in a commercial relationship wherein the debtor acted as a distributor of Friedrich products. As a part of this relationship, the debtor granted Friedrich a security interest, under a Security Agreement, dated July 18, 1978, in the following:

> all merchandise sold by Friedrich, including but not limited to [space in original] and such other goods acquired by the debtor from time to time, all chattel paper arising out of the sale of such goods, all proceeds of such goods and chattel paper and all proceeds of insurance arising from the loss of any of the foregoing in which Friedrich has a security interest.

The purpose of this grant of security was "to secure all extensions of credit made be [sic] Friedrich to the distributor, and in

Barbara Hadley Katz, DiPietro, Kantrovitz & Brownstein, New Haven, Conn., for AMSCO, Inc.

J. Philip Smyth, Thompson, Weir & Barclay, New Haven, Conn., for Arco Comfort Products.

Robert U. Sattin, Rosenberg, Rome, Barnett, Sattin & Santos, Hartford, Conn., for Walter E. Heller.

Douglas A. Strauss, Pullman, Comley, Bradley & Reeves, Bridgeport, Conn., for Creditors' Committee.

addition, to secure all other liabilities of the distributor to Friedrich ... presently existing or hereafter incurred..." The financing statement filed by Friedrich on August 22, 1978 to perfect its security interest defined the collateral in more specific terms. That financing statement in pertinent part reads as follows:

Friedrich air conditioners, air conditioning systems and accessories and any additions and accessions thereto, together with all of the Debtor's accounts, chattel paper and general intangibles now existing hereafter created or arising from the sale of such goods by Debtor, and all proceeds of insurance arising from the loss of any of the foregoing in which Friedrich has a security interest.

On August 14, 1981, Friedrich and Northrup, Incorporated (Northrup) entered into an agreement entitled: "Agreement For The Acquisition Of The Friedrich Air Conditioning And Refrigeration Co.'s Central Heating And Cooling Business By Northrup, Incorporated" (Acquisition Agreement). Under that Acquisition Agreement, Arco, the successor to Northrup,[1] claims that it acquired the security provided in the Security Agreement for extensions of credit made by Arco to the debtor.

The debtor, Friedrich, and Creditors' Committee, on the other hand, claim that there was never any assignment by Friedrich of its security. They further claim that because Friedrich did not assign the underlying debt owed it by the debtor, any purported assignment of its security interest was void as a matter of law.

### A.

As evidence of the assignment of security, Arco points to a document dated July 14, 1982, signed by Friedrich's president, and entitled "Agreement and Assignment of Security Interest" (Assignment Agreement). The Assignment Agreement, after referring to, inter alia, various provisions of the Acquisition Agreement executed nearly one year earlier, provides

NOW, THEREFORE, in consideration of the aforementioned, Friedrich agrees to assign, and does assign to Northrup and its successor, ARCO Comfort, all of the rights and remedies of Friedrich under the Security Agreement between American Supply Company and Friedrich dated July 18, 1978.

Arco couples the Assignment Agreement with the testimony of Philip Mintz, who has been Friedrich's credit manager for all times relevant here. At trial, Arco's attorney posed the following question to Mr. Mintz: "As part of the right to do business with these distributors, did you transfer the security agreements?" Mr. Mintz responded: "Yes, sir. We transferred to them all documents that were in those credit files." (Transcript dated July 16, 1982, p. 21)

The parties objecting to Arco's alleged secured status argue that the Assignment Agreement should be given little weight as it was executed at the eleventh hour, and actually underscores the absence of any mention of a security assignment in the Acquisition Agreement. They further claim that the relatively detailed Acquisition Agreement would have contained a specific reference to such an assignment had one been intended. Moreover, they emphasize the uncontroverted testimony of Mr. Mintz wherein he explained that Friedrich did not transfer its accounts receivable to Northrup by the Acquisition Agreement and, in fact, after the effective date of that agreement continued to look upon the contested collateral as security for the debt owed by the debtor to Friedrich.

■ The Assignment Agreement makes an assignment on July 14, 1982 in consideration of the provisions contained in the Acquisition Agreement, dated August 14, 1981. An assignment, such as this, made after the filing of the petition in this case cannot in itself provide security to a creditor for his unsecured claims.

---

1. By amendment to Northrup's Articles of Incorporation adopted by its shareholders on January 11, 1982, Northrup, Incorporated's name was changed to "Arco Comfort Products Co."

Putting aside the fact that the Assignment Agreement was executed after the bankruptcy petition was filed, I turn to the question of whether that agreement merely reflects Friedrich's intent to assign in August of 1978. The provisions in the Acquisition Agreement, cited in the Assignment Agreement, contain no mention of the word "security." Nor can a reasonable inference of an assignment of security be readily drawn from the cited provisions. This is not a surprising result, since Friedrich still considered that it had a security interest in the debtor's property after the effective date of the Acquisition Agreement.

### B.

The argument of Arco's counsel that Friedrich could retain its security interest but transfer the benefit of the future advances clause contained in the Security Agreement is not supported by the evidence, even if valid. I nevertheless examine Arco's position for the purpose of analysis and conclude that it is untenable.

The debtor, Heller, and the Creditors' Committee continue their attack against Arco's alleged secured status by arguing that even if Friedrich had intended to assign its security, an assignment of security without the debt which it secures is a nullity. Over sixty years, ago the Connecticut Supreme Court labeled the principle underlying this argument "universal." *Waterbury Trust Co. v. Weisman,* 94 Conn. 210, 218, 108 A. 550, 553 (1919). The Connecticut court, quoting *Carpenter v. Longan,* 83 U.S. (16 Wall.) 271, 274, 21 L.Ed. 313 (1872) stated:

The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity. *Id.*

Arco contends that the law as enunciated in *Carpenter* is not controlling here in view of Connecticut's adoption of the Uniform Commercial Code.[2] More specifically, Arco asserts that it is possible for Friedrich to retain the security interest arising under its security agreement and yet assign its security agreement which, because of the future advances clause contained therein, permits Arco to obtain its own security interest.

Clearly, the Uniform Commercial Code contemplates the assignment of security interests. Epstein, *Security Transfers By Secured Parties,* 4 Ga.L.Rev. 527 (1970). The Uniform Commercial Code expressly sanctions the use of future advances clauses in security agreements. Conn.Gen.Stat. § 42a–9–204(3).[3] But Arco has not presented, nor is the court aware of any decision, which combines these undisputed principles to allow multiple secured parties to claim rights under the same security agreement simultaneously as a result of a transfer such as alleged here. On the contrary, what little case law and commentary touch upon this area tends to run counter to Arco's position. *See In re Fretz,* 565 F.2d 366 (5th Cir.1978); *In re Goodman Industries,* 21 B.R. 512 (Bkrtcy.D.Mass.1982); *In re Belize Airways, Ltd.,* 7 B.R. 604 (Bkrtcy. S.D.Fla.1980); *In re Jackson,* 5 B.R. 164 (Bkrtcy.M.D.Tenn.1980); *see generally,* Epstein, *Security Transfers By Secured Parties, supra.* I accordingly conclude that had there been an attempted assignment as argued here, it would have been of no effect.

### II.

### IS ARCO'S SECURITY INTEREST PERFECTED?

Apart from the above analysis, the same result is reached from an examination of whether Arco's alleged security interest was perfected. Even assuming that Arco did obtain a valid security interest in the debtor's property, the security interest would be avoidable.

The debtor, again joined by Heller and the Creditors' Committee, argues that

---

2. The parties have stipulated that where state law is applicable, Connecticut law should apply.

3. Conn.Gen.Stat. § 42a–9–204(3) states:

Obligations covered by a security agreement may include future advances or other value whether or not the advances or value are given pursuant to commitment.

Arco's security interest is unperfected because the financing statement lists "American Supply Company" as the debtor's name rather than "Amsco, Inc.," its true corporate name.[4] Consequently, Arco's security interest may be avoided.

The legal framework for this challenge to Arco's secured status is not in issue. Under Conn.Gen.Stat. § 42a–9–301(1), "an unperfected security interest is subordinate to the rights of ... (b) a person who becomes a lien creditor before the security interest is perfected." Upon the filing of a bankruptcy petition, any such unperfected security interest in the debtor's property is avoidable by a trustee under Chapter 11 or debtor-in-possession,[5] under 11 U.S.C. § 544(a)(1).[6]

The legislative prescription for the perfection of a security interest requires, with few exceptions that do not apply here, the filing of a financial statement. Conn.Gen. Stat. § 42a–9–302(1). The financing statement in turn must, to be effective, include the name of the debtor. Conn.Gen.Stat. § 42a–9–402(1). Finally, "A financing statement sufficiently shows the name of the debtor, if it gives the corporate name of the debtor, whether or not it adds other trade names ...." Conn.Gen.Stat. § 42a–9–402(7).

Arco urges that "American Supply Company" is a corporate name of the debtor and, alternatively, the use of that name "was not seriously misleading" within the meaning of Conn.Gen.Stat. § 42a–9–402(8).[7] In support of its position, Arco offered a "Documents Submission," the contents of which, as listed by Arco, is noted below.[8]

■ At the outset, I reject Arco's contention that American Supply Company is a corporate name of the debtor within the meaning of Conn.Gen.Stat. § 42a–9–402(7). Since 1964 the records kept by the Connecticut Secretary of the State have reflected one legal name for the debtor: Amsco, Inc. The more difficult question is whether the use of "American Supply Company" was "not seriously misleading" under Conn.Gen. Stat. § 42a–9–402(8). Such an inquiry must be made on a case by case basis with the ultimate question being whether a third

---

**4.** On March 14, 1964, the debtor's name was changed from "American Supply Company, Incorporated" to "Amsco, Inc."

**5.** Pursuant to 11 U.S.C. § 1107, a debtor-in-possession, generally speaking, has all the rights of a trustee under Chapter 11.

**6.** 11 U.S.C. § 544

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists;

**7.** Conn.Gen.Stat. § 42a–9–402(8).

A financial statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading.

**8.** Arco's Document Submission consisted of the following:

"(a) ARCO Exhibit (1)—1981 Distribution Agreement signed by Marc Nelkin which uses American Supply Company, Inc.;

(b) ARCO Exhibit (2)—Security Agreement which uses American Supply Company;

(c) ARCO Exhibit (5)—Walter E. Heller's letter refers to Debtor as American Supply Company;

(d) 1976 Distributor Sales Agreement handwritten American Supply Co., Inc. over signature of Marc Nelkin;

(e) Letterhead March 15, 1982 shows AMSCO, Inc. and American Supply Company, Inc.;

(f) Letterhead January 23, 1979 same as (e) signed American Supply Co., Inc.;

(g) Affidavit July 26, 1982—telephone answered "American Supply";

(h) Check dated July 21, 1982—AMSCO, Inc. and American Supply Company, Inc.;

(i) Dun & Bradstreet—cross references;

(j) Speedy Reply Message dated March 30, 1982—only American Supply Co., Inc.;

(k) UCC–11 Search 1979 under American Supply Co. picks up AMSCO filing;

(l) UCC–11 Search 1982 under AMSCO, Inc. picks up American Supply Co. filings;

(m) Warehouse account—1982 in name of American Supply Co., Inc.; and

(n) Telephone listing in New Haven directory under both names—AMERICAN SUPPLY CO., INC. in bold face."

person would be misled by the misnomer. *See In re Leichter,* 471 F.2d 785 (2d Cir. 1972); *In re Excel Stores, Inc.,* 341 F.2d 961 (2d Cir.1965).

In *Leichter,* the debtor's name was Matthew R. Leichter, but the financing statement was filed and indexed under the name Landman Dry Cleaners. Notwithstanding that the debtor "apparently did his business under the trade name" 471 F.2d at 787, the court concluded that a subsequent creditor searching under the debtor's true name would not discover the defective financing statement. The court then observed:

"If the debtor's name is not given, the purpose of the statutory scheme of requiring security interest to be perfected by filing a financing statement—to give notice to future creditors of the debtor— would be seriously undermined." [quoting *In re Thomas,* 466 F.2d 51, 52 (9th Cir.1972)] In this regard, the trustee in bankruptcy must be deemed to stand in the shoes of the most favored creditor, not simply one who could—by virtue of his dealings with the debtor acting under his trade name—be held to a semblance of knowledge of the true facts; even such a creditor, knowing how UCC § 9–402 reads, might never search the filings under the trade name. That is to say, the trustee is more than a subsequent creditor seeking to build up his own equities at the expense of good faith creditors. Here the assignee of the filing creditor seeking to be secured over others, engaged in the financing business so that it should surely be familiar with the requirements of the Code, must be held to substantial compliance with the notice statute. Filing under the trade name only, we hold, was insufficient. *Id.* at 787–88 (footnotes omitted).

Arco relies heavily upon the case, *In The Matter of Glasco,* 642 F.2d 793 (5th Cir. 1981). There, the debtors legal corporate name was "Glasco, Inc.," though it operated its business solely under the name, "Elite Boats, Division of Glasco, Inc." *Id.* at 795. A financing statement was filed which named the debtor as "Elite Boats, Division of Glasco, Inc." The court held that "listing the debtor by the sole name in which it

did business was not misleading, because any prudent creditor would have requested the Secretary of State to search under 'Elite Boats' in addition to 'Glasco, Inc.'" *Id.* at 796. The court then distinguished cases where an individual engaged in business under a trade name, reasoning that such an individual debtor necessarily holds himself out to the credit community under two names. *Id.*

The dissent in *Glasco* persuasively rejected this distinction and, in so doing, observed: "Surely the trustee could be taken to stand in the shoes of such an ideal creditor who had no notice" of the non-legal name. *Id.* at 798. The dissent further noted that under UCC § 9–402 even creditors who knew the trade name would be justified to search only under the legal name. *Id.,* citing *In re Leichter, supra,* for that proposition in regard to a trustee in bankruptcy. Finally, the dissent addressed the adverse commercial ramifications of the majority's decision:

[under the majority decision] "potential creditors must undertake to discover trade names and to conduct additional searches in order to avoid a judicial determination that they lacked diligence. And even if they follow such precautions they might yet overlook one trade name and face potentially expensive litigation over whether they should have known about that trade name." *Id.*

Here, similarity between American Supply Company and Amsco, Inc. is not so close as to render the former not seriously misleading under the line of cases which ignore trivial misspellings or recognize slightly different names. Furthermore the frequent use of a name is insufficient to save a financing statement as "not seriously misleading," especially against the trustee in bankruptcy, *see In re Leichter, supra; In re Glasco, supra* (dissent).

One aspect of Arco's claim regarding perfection remains to be addressed. Arco produced a copy of a standard form U.C.C. 11, dated July 22, 1982, which lists all the financing statements naming "Amsco, Inc." as debtor. Among those listed is the financing statement in question.

The evidence, notwithstanding the arguments of counsel, failed to demonstrate, however, the manner in which the search was conducted. Moreover, the evidence presented by Arco failed to persuade me that a trustee in bankruptcy as "the most favored creditor"[9] would have discovered the subject financing statement had he conducted a search on the date the petition was filed. The financing statement itself makes no reference to Amsco, Inc., and there is no direct evidence that the financing statement was cross-indexed. Accordingly, the likelihood that a search under Amsco, Inc. would normally locate the errant financing statement cannot be determined.

For the above reasons, I hold that the financing statement is defective and, had Arco obtained a security interest, it would be avoidable.[10]

## III.

## ORDER

Accordingly, I conclude that Arco is not a secured creditor, and it is SO ORDERED.

---

9. *In re Leichter, supra,* 471 F.2d at 787.

10. The other issues raised by the parties need not be addressed in light of my decision herein.