In re Charles Gene LANE and Elaine Lane, Debtors.

FIRST NATIONAL BANK OF LEVELLAND, Plaintiff,

v.

Myrtle McDONALD, Trustee, Defendant.

HALLMARK CARDS, INC., Plaintiff,

v.

Myrtle McDONALD, Trustee, Defendant.

Bankruptcy No. 583–00188.

United States Bankruptcy Court, N.D. Texas, Lubbock Division.

July 4, 1984.

James Walters, Lubbock, Tex., for debtor.

Larry Glazner, Levelland, Tex., for Hallmark Cards and First National Bank of Levelland.

Myrtle McDonald, Lubbock, Tex., trustee.

## MEMORANDUM AND ORDER

BILL H. BRISTER, Bankruptcy Judge.

First National Bank of Levelland ("Bank") filed motion to modify stay to permit it to foreclose its claimed liens against inventory, fixtures, and accounts receivable of the debtors. Hallmark Cards, Inc. ("Hallmark") filed motion for modification of stay to permit it to foreclose its claimed liens against fixtures. J.E. Franklin, a co-debtor with the debtors on the bank indebtedness, intervened and urged granting of the requested relief requested by the bank. Each motion was concerned with some of the same property and similar defenses were advanced by the debtor to each motion. Therefore the two motions were consolidated for nonjury trial on December 12, 1983. The following summary constitutes the findings of fact and conclusions of law.

On October 9, 1976, debtors, Charles Gene Lane and Elaine Lane, opened a Hallmark card shop at 801 Houston Street in Levelland, Texas, which they operated as a sole proprietorship under the common name and style of "E'Lane's Expression Shoppe." On March 10, 1978, the debtors formed a partnership with Billie Franklin and Julian E. Franklin for the ownership and operation of a retail sales outlet for religious and inspirational materials which they operated at 504 Avenue G in Levelland, Texas, under the common name and style of "E'Lane's Agape Bookstore."

The record does not clearly reflect when the Hallmark card shop at 801 Houston Street, operated under the name of E'Lane's Expression Shoppe, was closed. However, it does appear that at least for a period of time the debtors were involved in ownership and operation of two separate businesses at the same time—the Hallmark card store as sole proprietors and the bookstore in partnership with the Franklins.

As far as the record reflects the business operations prior to July 1980 required no outside financial arrangements. In any event there was no evidence adduced at the trial which reflected the existence of any relevant liens against the debtors' property prior to July 1980.

In July 1980 a third business location was opened by debtors and the Franklins at 210 Club View Drive in Gentry Square Shopping Center in Levelland, Texas. Again, it is not clear in the record whether any of the remaining assets of the proprietorship operation of the Hallmark card shop were initially transferred to the new location, but it is clear that the assets of the bookstore were transferred to the new operation. The partnership agreement was amended on July 18, 1980, to reflect the change of the partnership name from "E'Lane's Agape Bookstore" to "E'Lane's" and at all relevant times thereafter the business operations in which the debtors were involved were conducted at that address.

Extensive financing was required for the new operation. On July 9, 1980, E'Lane's, by and through the debtors' signatures and those of the Franklins, executed a promissory note to the order of the bank in the principal sum of $125,000.00 and secured the note with three security agreements and financing statements against all accounts, merchandise inventory, furniture, fixtures and equipment then owned or thereafter acquired by E'Lanes. The financing statements, reflecting "E'Lane's," 210 Club View Drive, Levelland, Texas, 79336 as debtor, were filed with the Secretary of State of Texas and with the Hockley County Clerk.

I have remarked earlier that whether the Hallmark card store which had been operated by the debtors as a proprietorship had been terminated or whether it was removed to the new Gentry Square Shopping Center location was not reflected by the record. It is clear, however, that the debtors and the Franklins intended for a Hallmark card operation also to be conducted at the Gentry Square Shopping Center location. On October 10, 1980, the debtors and the Franklins, as partners, contracted with Hallmark

Cards, Inc. for the purchase of inventory, fixtures and equipment. In connection with that purchase they executed a note to Hallmark on October 10, 1980, in the principal sum of $40,877.31, secured [1] by security agreement and financing statement describing "trade fixtures, card racks and related equipment."

The contract for purchase reflected that the debtors and the Franklins had conducted business as a partnership at 210 Club View Drive, Gentry Square Shopping Center, in Levelland, Texas, under the name of "E'Lane's." However the security agreement and the financing statements reflected the identity of "debtors" to be "Charles E. and Elaine Lane and J.E. and Billie Franklin, d/b/a E'Lane's Expression Shoppe, 210 Club View Drive, Gentry Square Shopping Center, Levelland, Texas 79336."

The business operations were not as profitable as the partners had hoped. They executed a partnership dissolution agreement, effective August 1, 1982, whereby the Franklins conveyed their interest in the partnership business to the debtors, the debtors agreed to hold the Franklins harmless on account of any debts of the business which might subsequently arise, and an agreement was reached between them for the payment of the existing partnership debts. Specifically, for the purposes of this memorandum, the Franklins agreed to pay one-half of the indebtedness to the bank. The bank divided the existing indebtedness between the debtors and the Franklins. The Franklins executed a new note to the bank in the principal sum of $64,279.05, dated February 12, 1982, and the debtors executed a new note to the bank in the principal sum of $125,000.00 which immediately was credited with the sum of $64,279.05, the amount of the Franklin note.

The debtors continued the business operations until they filed petition for order for relief under Chapter 7 on September 29, 1983. At the time of trial the balance owed to the bank by the debtors was approximately $69,000.00. The balance owed to Hallmark was $20,266.00. The evidence established that the value of the fixtures against which Hallmark has the superior lien does not exceed $30,000.00 and that the value of the inventory and remaining collateral does not exceed $50,000.00. Thus, there is no equity in those assets for the debtors' estate unless the validity of either of the liens can be successfully challenged by the trustee.

The trustee challenges the validity of the bank's liens on two separate bases. First, she challenges the financing statement which attempted to perfect the lien only under the trade name. Second, she contended that when the bank filed the financing statements, reflecting the debtor to be "E'Lane's," the operation was that of a partnership. However, at least by February 1982 the cognizant bank officers were aware that the partnership was being dissolved and that the business was continuing under the same name of "E'Lane's" as a proprietorship. She posits that the bank was required by § 9.402(g),[2] Texas Business and Commerce Code to refile a financing statement within four months of the change of the business structure or it loses its lien.

---

**1.** The security agreement was dated July 22, 1980, and the financing statements were filed for record in early August 1980, thus predating the note by almost three months. No challenge to the Hallmark lien was based upon that fact and none is suggested.

**2.** § 9.402(g), Texas Business and Commerce Code:

A financing statement sufficiently shows the name of the debtor if it gives the individual, partnership or corporate name of the debtor, whether or not it adds other trade names or the names of partners. Whether the debtor so changes his name or, in the case of an organization, its name, identity or corporate structure that a filed financing statement becomes seriously misleading, the filing is not effective to perfect a security interest in collateral acquired by the debtor more than four months after the change, unless a new appropriate financing statement is filed before the expiration of that time. A filed financing statement remains effective with respect to collateral transferred by the debtor even though the secured party knows of or consents to the transfer.

The challenge advanced by the trustee to the Hallmark financing statement is that it gave the incorrect trade name, because in July 1980 when the security documents were executed, and at all relevant times thereafter, the correct trade name under which the debtors and the Franklins operated as "E'Lane's" and not "E'Lane's Expression Shoppe." The trustee points to the fact that the contract between Hallmark and the debtors reflected the trade name of the partnership to be "E'Lane's" and thus it knew that debtors were no longer conducting business as "E'Lane's Expression Shoppe." Also, she argues that Hallmark knew, or had reason to know, that the Franklins and the debtors had dissolved the partnership in 1982. She argues that Hallmark should have refiled after the change of business operation from that of partnership to proprietorship.

The purpose for which a financing statement is filed is to give notice to creditors and other interested parties that a security interest might have been perfected in certain collateral. There are Texas cases which reflect that the filing of a financing statement in the trade name instead of the name of the interested individuals is insufficient to perfect a lien. However, the United States Court of Appeals for the Fifth Circuit recently noted that that rule was not absolute. *In re McBee*, 714 F.2d 1316 (5th Cir.1983). In *McBee* the debtor, a proprietorship, operated under the trade name of "Oak Hill Gun Shop." A creditor made a business loan to Oak Hill Gun Shop and filed its financing statement under the same name. The Fifth Circuit held that while Texas law states that (in the case of an individual proprietorship) filing under the trade name is insufficient the principle "cannot be applied blindly without reference to the overriding purpose it seeks to serve."

■ In determining whether a financing statement gives adequate notice each case must be judged upon its own facts. *Matter of Glasco, Inc.*, 642 F.2d 793 (5th Cir. 1981). There, as here, the determining factor was whether subsequent creditors would have been misled as a result of filing a financing statement under the trade name and not the individual's name. In *Glasco* the creditor filed the financing statement under the trade name and not under the actual name of "Glasco, Inc." The Court found that the debtor had held itself out to the community under its trade name and in fact had used its trade name on all of its checks, stationery, and bank accounts. The Court held that listing the debtor under its trade name, "Elite Boats, Division of Glasco, Inc.," was not seriously misleading to the public.

■ I perceive no substantial defects in the financing statements filed by the bank and those filed by Hallmark which mandate the avoidance of the liens. Each of the relevant trade names contained the name "E'Lane's". That form of name is unique and one searching the record for financing statement filings would be placed on further inquiry when that particular form of the name was discovered. Particularly that concept is applicable where, as here, the correct address of the operation at 210 Club View Drive in Levelland, Texas, was reflected on each financing statement and, in the case of the Hallmark financing statement, the names of the individuals also were given.

■ Also, I reject the argument advanced by the trustee that refiling of the financing statement is required when the original filing was under the trade name but the ownership of the business changed from that of partnership to proprietorship. The business continued at the same address under the same name. The original filing under the trade name, when the ownership was that of the partnership, continued to give notice to all interested parties.

I conclude that Hallmark Cards, Inc., properly and timely perfected its lien against the fixtures and the First National Bank of Levelland properly perfected its lien against accounts receivable, inventory, furniture, fixtures and equipment of E'Lane's at 210 Club View Drive, Gentry Square Shopping Center, Levelland, Texas.

No equity exists in any of the collateral, and the trustee has made no showing as to how the bank and Hallmark can be adequately protected.

It is, therefore, ORDERED by the Court that the motion for modification of stay filed by the First National Bank of Levelland be, and it is hereby, granted and the bank is granted leave to employ all lawful procedures to enforce its lien against accounts receivable, merchandise inventory, furniture, equipment, and, to the extent that the Hallmark lien does not apply fixtures.

It is further ORDERED by the Court that the motion for modification of stay filed by Hallmark Cards, Inc. be, and it is hereby, granted and Hallmark is permitted to employ all lawful procedures to enforce its lien against fixtures of E'Lane's at 210 Club View Drive, Gentry Square Shopping Center, Levelland, Texas.

All relief not herein granted is denied.