**In re SWATI, INC., Debtor.**

**Bankruptcy No. 84 B 14876.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Oct. 31, 1985.

---

Arthur G. Simon, Dannen, Crane, Heyman & Haas, Chicago, Ill., for debtor.

Joseph L. Matz, Mitchell E. Jones, Teller, Levit & Silvertrust, Chicago, Ill., for RCA.

## MEMORANDUM AND ORDER

ROBERT L. EISEN, Bankruptcy Judge.

This matter was heard on the motion of RCA Service Company, Division of RCA Corporation ("RCA"), to lift the automatic stay pursuant to section 362 of the Bankruptcy Code. A threshold issue for determination is whether RCA properly perfected its security interest by filing a financing statement under the debtor's trade name alone. For the reasons set forth below, the court concludes that RCA did not properly perfect its security interest against the debtor. Therefore, RCA is not a secured creditor of the estate entitled to a lifting of the automatic stay.

## BACKGROUND

On June 8, 1982, Swati, Inc. d/b/a King's Plaza Hotel ("Swati, Inc." or "debtor") entered into a lease agreement with RCA for certain telephone equipment. The contract provided for 84 successive monthly payments of $1,469.00 for a total aggregate rental of $123,396.00. At the expiration of the full term of the lease and the payment of all rents due thereunder, title to the telephone equipment would automatically vest in the lessee upon the payment of the sum of $1.00 to RCA.

Pursuant to the contract's Rider, RCA reserved title to and a security interest in the telephone equipment. A U.C.C. financing statement evidencing RCA's security interest was filed with the Illinois Secretary of State on August 24, 1982. Neither the underlying contract nor the financing statement designated Swati, Inc. as the debtor but rather listed debtor's trade name, King's Plaza Motel.[1] In October, 1982, the parties amended the face of the contract by a handwritten notation adding the words "Swati, Inc. dba" in front of "King's Plaza Motel."

On November 21, 1984, Swati, Inc. filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code and has continued to operate its business and manage its property as a debtor in possession. On March 6, 1985, RCA filed an application to prohibit debtor's use of its collateral and to modify the automatic stay pursuant to section 362(d) to allow RCA to foreclose upon the equipment, alleging that the sum of $15,691.52 was due and owing as of January 31, 1985. In reply, Swati, Inc. takes the position that, because RCA filed its financing statement under the debtor's trade name and not its corporate name, RCA failed to perfect its security interest and is therefore merely a general unsecured creditor of the Chapter 11 estate.

## DISCUSSION

Section 9–301(1) of the Illinois Commercial Code, Ill.Rev.Stat. ch. 26, § 9–301 (Smith-Hurd 1984) provides that an unperfected security interest is subordinate to the rights of a person who becomes a lien

---

1. The debtor's trade name in fact is King's Plaza Hotel.

creditor before the security interest is filed. A lien creditor is defined under section 9–301(3) as:

> ... [A] creditor who has acquired a lien on the property involved by attachment, levy or the like and includes an assignee for benefit of creditors from the time of assignment, and a trustee in bankruptcy from the date of the filing of the petition or a receiver in equity from the time of appointment.

Pursuant to section 1107(a) of the Bankruptcy Code, a debtor in possession generally has all the rights and powers of a trustee under Chapter 11, which includes the trustee's rights and powers as a hypothetical lien creditor under section 544(a).[2] Basically, section 544(a) of the Bankruptcy Code gives the trustee, upon the filing of the bankruptcy petition and without regard to any knowledge of the trustee, those powers which the state law would allow to a hypothetical creditor of the debtor who, as of the commencement of the case, had completed the legal processes for perfection of a lien upon property of the debtor available for satisfaction of his claim against the debtor. *In re Jerome*, 31 B.R. 266, 268 (Bankr.D.Vt.1983). Improperly perfected security interests in the debtor's property are therefore vulnerable to the rights of a debtor in possession as lienor under section 544(a). *In re Amsco, Inc.*, 26 B.R. 358, 362 (Bankr.D.Conn.1982). For RCA to prevail on its motion to modify the automatic stay, it must demonstrate that it held a valid perfected security interest in the collateral herein.

The requirements for financing statements are set forth in section 9–402(7) of the Illinois Commercial Code, Ill.Rev.Stat. ch. 26 § 9–402 (Smith-Hurd 1984):

A financing statement sufficiently shows the name of the debtor if it gives the individual, partnership or corporate name of the debtor, whether or not it adds other trade names or names of partners....

Section 9–402(7), which is identical to section 9–402(7) of the Uniform Commercial Code, provides affirmative endorsement for the requirement of filing under the correct entity name. *See In re Beacon Realty Inv. Co. of Salina*, 44 B.R. 875, 878 (Bankr. D.Kan.1984). As the U.C.C. 1972 Official Comment explains:

> Subsection (7) undertakes to deal with some of the problems as to who is the debtor. In the case of individuals, it contemplates filing only in the individual name, not in a trade name.... Trade names are deemed to be too uncertain and too likely not to be known to the secured party or person searching the record, to form the basis for a filing system....

The Illinois Code Comment to section 9–402(7) further elaborates:

> \* \* \* \* \* \*

> Difficulties have arisen under the Code in cases where a financing statement (normally indexed according to the debtor's "name" under § 9–403(4)) gave a trade name for the debtor rather than his or its legal name. Parties searching the records under the debtor's legal name were frequently unaware of prior security interests indexed only under a trade name; most courts have held such a filing inadequate, given the "notice" purpose of a financing statement. There

---

**2.** Section 544(a) provides in relevant part:
(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all

property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or
\* \* \* \* \* \*

was, however, a split of authority on the point which this subsection now resolves.

. . . . .

Where the debtor is incorporated, the name of the corporation should always be used in the financing statement; ...

Swati, Inc. maintains that the Illinois Code Comment to section 9–402(7) is clear that where the debtor is incorporated, the name of the corporation should always be used in the financing statement. However, RCA bases its argument that it possesses a perfected security interest on section 9–402(8) of the Illinois Commercial Code which provides:

(8) A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading.

Ill.Rev.Stat. ch. 26 § 9–402 (Smith-Hurd 1984). RCA contends that the purpose of a U.C.C. financing statement is to give notice and that perfect accuracy is not required so long as the financing statement contains sufficient information to put any searchers on inquiry. RCA states that Swati, Inc., besides entering into the original contract under the name of King's Plaza Motel, did business under its trade name and held itself out to the community under that name. Therefore, RCA would urge that its financing statement was not seriously misleading to Swati, Inc.'s creditors since a reasonably prudent creditor would conduct a search under the debtor's trade name.

Under the notice filing system provided by the U.C.C., a secured party seeking to perfect a security interest in collateral must provide enough information to alert an interested party of a possible prior security interest in that collateral. *Matter of Fowler,* 407 F.Supp. 799, 802 (W.D.Okla. 1975); *In re Lane,* 41 B.R. 285, 288 (Bankr. N.D.Tex.1984). Reading section 9–402(7) in conjunction with Section 9–402(8), it is obvious that the U.C.C. "seeks to maximize the probability of notice and simultaneously to minimize the possibility that a security interest will be defeated by formal and rigid technicalities." *In re McBee,* 714 F.2d 1316, 1324 (5th Cir.1983). Thus, when a debtor's name is erroneously listed on a financing statement, the dispositive question in assessing whether a security interest is perfected is whether a reasonably prudent subsequent creditor would be likely to discover the prior security interest. *Id.* at 1321; *In re McCauley's Reprographics, Inc.,* 638 F.2d 117, 119 (9th Cir.1981); *In re Eady,* 4 B.R. 1, 3 (Bankr.N.D.Ga. 1980).

In determining whether a financing statement gives adequate notice, courts have utilized a flexible ad hoc approach. *In re McCauley's,* 638 F.2d at 119. Notwithstanding, a substantial body of authority exists which is unanimous in holding a financing statement defective and insufficient to constitute perfection where the filing is under a name that is significantly different from the actual owner of the collateral or under an entity which is legally different from the actual owner even if the names are virtually identical. *In re Sportswear Shoppe, Ltd.,* 15 B.R. 970, 975 (W.D.Mo.C.D.1981). *See, e.g., Matter of Lintz West Side Lumber, Inc.,* 655 F.2d 786 (7th Cir.1981); *In re McCauley's Reprographics, Inc.,* 638 F.2d 117 (9th Cir. 1981); *In re My Place or Yours, Inc.,* 34 B.R. 197 (Bankr.D.Vt.1983); *In re Amsco, Inc.,* 26 B.R. 358 (Bankr.D.Conn.1982).

Thus, filing under a debtor's trade name is not per se insufficient to perfect a security interest where the trade name is substantially similar or sufficiently related to the actual name of the debtor so as to give notice of a possible prior existing security interest to anyone searching the records. *In re Moore,* 21 B.R. 898, 901 (Bankr.E.D. Tenn.1982). *See Matter of Maples,* 33 B.R. 14 (Bankr.W.D.Mo.1983). On the other hand, where the trade name materially differs from the debtor's real name, a financing statement filed thereunder falls short of the inquiry notice purpose of section 9–402 of the U.C.C., making the filing defective. *See, e.g., In re Leichter,* 471 F.2d 785 (2d Cir.1972); *In re Firth,* 363 F.Supp. 369 (M.D.Ga.1973); *In re LFT, Ltd.,* 36 B.R. 411 (Bankr.D.Hawaii 1984).

In the case *sub judice,* a filing under the trade name "King's Plaza Motel" is materially different from a filing under the corporate name "Swati, Inc." [3] The financing statement makes no reference to "Swati, Inc." nor is there any evidence that the statement was cross-indexed. The difficulty of finding a financing statement filed under "King's Plaza Motel" while searching under "Swati, Inc." is clear. The names are not sufficiently similar so as to provide a searching creditor with reasonable notice of the security interest of RCA. The court concludes that RCA's financing statement filed under the trade name "King's Plaza Motel" is seriously misleading and is therefore ineffective to perfect RCA's security interest.

RCA relies on *In re McBee,* 714 F.2d 1316 (5th Cir.1983) and *Matter of Glasco, Inc.,* 642 F.2d 793 (5th Cir.1981) in support of its contention that the trade name filing herein was not seriously misleading. In *Matter of Glasco, Inc.,* the creditor's financing statement listed the debtor by the name in which it did business, "Elite Boats, Division of Glasco, Inc.", rather that its legal corporate name, "Glasco, Inc." The debtor therein held itself out to the community and creditors as "Elite Boats" and there was no indication that the debtor ever held itself out under its legal corporate name. While acknowledging that in most cases filing under a trade name would be seriously misleading, the Court of Appeals reasoned under the facts of that case that any reasonably prudent creditor would have requested a search under debtor's business name. Similarly, in *In re McBee,* the Court of Appeals was of the opinion that some cases exist where a filing under a debtor's trade name would provide creditors with equal, if not superior, notice of prior security interests. Since the trade name of the sole proprietorship in that case, "Oak Hill Gun Shop," was consistent-

ly used and well known to all creditors, the court concluded that a reasonably diligent searcher would be more likely to discover the trade name filing rather than a filing in the individual owner's name.

This court finds neither case persuasive on the issue. Although Swati, Inc. apparently held itself out under the name "King's Plaza Hotel", the record reflects that other creditors of this estate filed proper financing statements under the debtor's true name. RCA itself appears to have been on notice of the debtor's corporate name pursuant to its own documents. Both the amended lease agreement and RCA's Statement of Account, submitted with RCA's application to modify the automatic stay, on their face designate the debtor as "Swati, Inc. dba King's Plaza Motel." The court further notes that RCA never disputes the debtor's allegations that it knew Swati, Inc.'s true name. This is not a case like *In re Beacon Realty Inv. Co. of Salina,* 44 B.R. 875 (Bankr.D.Kan. 1984) where employment of the debtor's trade name of "Hilton Inn" was consistent to the point of uniformity and exclusivity. In *Beacon,* the court acknowledged that "[e]ntry by a finder of fact into the shadowy area of trade creditors' perceptions is to be discouraged; ordinarily such an inquiry would tend to produce unreliable results." *Id.* at 879. Notwithstanding, the court in *Beacon* felt it extremely harsh to penalize the creditor for failing to file in the undisclosed and unknown name of the debtor/partnership since no creditor nor the public at large had reason to believe that "Hilton Inn" was other than an independent autonomous business. Rather, from a practical standpoint, a filing under the partnership name would likely have been seriously misleading.

Based on the record in this case, RCA would be hard pressed to contend that it had no reason to believe "King's Plaza Hotel" was other than an "independent au-

---

**3.** The court notes that had the debtor's actual name been "King's Plaza Hotel", a filing under the name "King's Plaza *Motel*" would be the type of minor error in designating a business debtor that is not seriously misleading under U.C.C. § 9–402(8). The first name of the business would be accurately listed and the name is

somewhat unusual. Therefore, "inconsistencies in the remainder of the business entity listed would at least leave a prudent investigator on notice that the business listed was the business debtor in question." *Citizens Bank v. Ansley,* 467 F.Supp. 51, 54 (M.D.Ga.1979). *See In re Excel Stores, Inc.,* 341 F.2d 961 (2d Cir.1965).

tonomous business." Moreover, frequent use of a trade name is insufficient to save a financing statement as not seriously misleading, especially against a trustee in bankruptcy. *In re Amsco, Inc.*, 26 B.R. at 363. In that regard, RCA argues that even if a trustee is a perfect lien creditor, filing the bankruptcy petition under the debtor's actual name as well as its trade name, i.e., "Swati, Inc. dba King's Plaza Hotel", would put such trustee on notice to search for all financing statements under those names so that the financing statement listing debtor's trade name would reasonably be found.

The purpose of granting the debtor in possession the powers of a trustee in bankruptcy under section 1107 of the Bankruptcy Code is to ensure that creditors as a whole are treated fairly. *In re Sportswear Shoppe*, 15 B.R. at 976. It is for the benefit of creditors, and not its own benefit, that the debtor in possession wields the trustee's avoidance powers so that the real contest in this case is between RCA and all of Swati, Inc.'s other unsecured creditors. *See Matter of Hughes*, 704 F.2d 820, 822 (5th Cir.1983). The fact that no creditor was actually misled by RCA's filing is not determinative. Rather, the controlling fact is that the debtor in possession, as an ideal creditor without notice pursuant to section 544(a) of the Bankruptcy Code, would not have discovered RCA's lien. *See In re Thrift Shoe Co., Inc.*, 502 F.2d 1211, 1213 (9th Cir.1974). As set forth by the court in *In re Leichter*, 471 F.2d 785 (2d Cir.1972):

> In this regard, the trustee in bankruptcy must be deemed to stand in the shoes of the most favored creditor, not simply one who could—by virtue of his dealings with the debtor acting under his trade name— be held to a semblance of knowledge of the true facts; even such a creditor, knowing how U.C.C. § 9-402 reads, might never search the filings under the trade name. That is to say, the trustee

is more than a subsequent creditor seeking to build up his own equities at the expense of good faith creditors.

*Id.* at 787–788.

Even though the debtor herein signed the lease agreement and defective financing statement, the challenge by the debtor in possession to RCA's secured status is sufficient to invalidate RCA's security interest. *See In re LFT, Ltd.*, 36 B.R. 411, 413 (Bankr.D.Hawaii 1984).[4] The debtor in possession as a hypothetical lien creditor can be considered to have been prejudiced by RCA's seriously misleading financing statement. *See Matter of Lintz West Side Lumber, Inc.*, 655 F.2d 786, 792 (7th Cir. 1981).

The court concludes that pursuant to the Illinois Commercial Code and under the weight of authority, allowance of the filing of financing statements under a name other than the actual name of the debtor would frustrate the underlying purpose of the U.C.C. filing requirements. *In re Moore*, 21 B.R. 898, 900 (Bankr.E.D.Tenn. 1982). Filing under a trade name which is not sufficiently similar to the debtor's actual name increases the potential either for discretion by a dishonest debtor or for honest mistakes. *In re Moore*, 21 B.R. at 903. As further stated by the court in *Moore:* "Considering the desirability of certainty in the commercial lending arena, a secured creditor should always file the financing statement so that it will be indexed under the actual name of the debtor." *Id.*

The court further concludes that the extra burden that trade name filing puts on creditors searching the record is contrary to the implied policy of the U.C.C. that those seeking to perfect a security interest bear the burden of proper filing. *See Greg Restaurant Equip. & Supplies v. Valway*, 472 A.2d 1241 (S.Ct.Vt.1984). Even creditors with knowledge of the debtor's trade name would be justified to search only under the debtor's actual name. The terms

---

4. Moreover, the fact that a secured party may have filed the defective financing statement in good faith does not render the filing effective as against the corporation's trustee in bankruptcy.

*In re My Place or Yours, Inc.*, 34 B.R. at 199. Good faith is only a necessary, not a sufficient, condition for perfection under the U.C.C. *Matter of Lintz,* 655 F.2d at 792.

of U.C.C. § 9–402 require no more. *Matter of Glasco, Inc.*, 642 F.2d at 798 (Tuttle, J., dissenting). Thus, a searcher versed in the operation of the U.C.C. should be able to rely on a creditor to submit the debtor's legal name and not a trade name. *Id.* at 799. In particular, a creditor such as RCA who is "engaged in the financing business so that it should surely be familiar with the requirements of the Code, must be held to substantial compliance with the notice statute." *In re Leichter*, 471 F.2d 785, 788 (2d Cir.1972).

## CONCLUSION

Under section 9–301(1) of the Illinois Commercial Code, unless an effective filing is made with the Secretary of State, a security interest is subordinate to the rights of a trustee in bankruptcy. RCA failed to perfect its financing statement in compliance with section 9–402(7) and its filing under the debtor's trade name was seriously misleading under section 9–402(8). Because RCA's security interest was not properly perfected, the rights of the debtor in possession, Swati, Inc., as lienor under section 544 of the Bankruptcy Code, are superior to the rights of RCA. RCA, not being a secured creditor, falls into the class of unsecured creditors not entitled to an order lifting the stay.

IT IS THEREFORE ORDERED that the motion for modification of the automatic stay filed by RCA is hereby denied.